(77 South. 675)

PENTICOST v. MASSEY. (6 Div. 475.)

(Supreme Court of Alabama. Nov. 15, 1917. On Rehearing, Jan. 24, 1918.)

1. MASTER AND SERVANT ⊜332(1)—AUTOMOBILES — PEDESTRIAN — IDENTITY OF CAR — QUESTION FOR JURY.

In an action for death of child, evidence *held* sufficient to take to the jury the question as to the identity of the automobile that ran down the child.

2. MASTER AND SERVANT ⊜300 — INJURIES TO THIRD PERSONS—RESPONDEAT SUPERIOR.

Where liability is sought to be fastened on a master upon the principle of respondeat superior, the two important questions are the existence of the contractual relation of master and servant, and whether the act or omission complained of was performed within the scope of the employment.

3. MASTER AND SERVANT ⊜301(1)—RESPONDEAT SUPERIOR — AUTOMOBILES — TITLE TO CAR—DOMINION.

In an action for injuries occasioned by automobile driven by a servant, it is immaterial that title to the car is in defendant's wife and that she pays the driver, where defendant has full dominion over the car and driver and furnishes the wife with funds to pay all the servants.

4. MASTER AND SERVANT ⊜332(2)—INJURIES TO THIRD PERSONS—AUTOMOBILES.

Where person injured by automobile shows that the driver was in the employ of the owner, there is an inference that the servant was acting within the scope of his employment at the time of the injury, and the court cannot direct a verdict for defendant on that issue, especially where the defendant's evidence is only negative and the servant is not a witness, because the jury might infer that the servant was driving somewhere for tools or to get repairs, or do other things in connection with his duties.

5. MASTER AND SERVANT ⊜332(2)—INJURIES TO THIRD PERSONS — AUTOMOBILE — QUESTIONS FOR JURY.

In action for death of child caused by automobile driven by servant, whether driver was in employ of defendant and was acting within the scope of his employment *held*, under the evidence, for the jury.

Appeal from City Court of Birmingham; Robert N. Bell, Special Judge.

Suit by S. Penticost, as administrator, against Richard W. Massey. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Suit by appellant as administrator, against appellee, to recover damages for the death of his girl, eight years old, who was run over and killed by an automobile on a public highway in the city of Birmingham, in front of an apartment house known as Terrace Court, located at the intersection of Highland av-

---

enue and Twentieth street. At the conclusion of the evidence for plaintiff, defendant offered testimony, and, when the case was closed, the court gave at the request of defendant the general affirmative charge, and instructed the jury orally to find for the defendant. Counsel for the defendant handed to the jury the verdict already written out, which was signed by one of the members as foreman, while the jury remained in the box; the court instructing said verdict to be signed. From the judgment for the defendant plaintiff prosecutes this appeal.'

The evidence for plaintiff tended to show the following: The child of the plaintiff was run over and killed by an automobile December 19, 1913, at Terrace Court on Highland avenue in the city of Birmingham. Highland avenue seems also to be known as Twelfth avenue. Twentieth street runs north and south, and Twelfth avenue runs east and west. Terrace Court is on the northwest corner. The car that struck plaintiff's child was going west on Twelfth avenue, and was a large car known as a limousine. The child was next to the curbing next to Terrace Court, and was struck by the front part of the car near the right-hand side, and her neck was broken. When plaintiff, the father of the child, reached her, she was lying two or three feet from the sidewalk, and never regained consciousness. The child was at the time in the act of crossing from Terrace Court going over Twelfth avenue. The witnesses for plaintiff testified that they saw but one person in the car; that was the chauffeur, who was a white man. Some of the witnesses identified the chauffeur as one Herbert Young. Some of plaintiff's testimony further tended to show that the car was defendant's car, and that Herbert Young was his chauffeur. They further testified that the car was running across Twentieth street, going west on Twelfth avenue at a high rate of speed, estimated by some as 35 miles per hour, and that after the child was struck the car made no stop, but continued down Twelfth avenue going west.

The accident occurred, according to the estimate of several witnesses, some time between 6 and 7 o'clock in the afternoon, or at a time as estimated to be about dark, or getting dark.

The home of defendant is south of Highland avenue on Beech street, which is three blocks east of Highland avenue. Some of the witnesses testified that defendant lived about five blocks east of Twentieth street on Beech street. The evidence for plaintiff further tended to show that the intersection of these streets was well lighted, and that the machine gave no signal, and sounded no alarm of any kind; that Herbert Young was working for Mr. Massey, the defendant; and that defendant had been seen riding in this car numbers of times, and had given orders to Herbert Young in regard to the car, and also

had seen defendant give Herbert Young money, or pay him as his chauffeur for working for him. The car was run and used by defendant and his family, Herbert Young had been seen working on the car at the house of defendant, and that defendant had been seen present at the time giving directions, or saying something about the car.

The evidence for the defendant tended to show that the car was the property of his wife, it having been an anniversary gift; that it was operated by Herbert Young as the chauffeur, but that the chauffeur was employed by his wife. The evidence for defendant, however, tended to show that there were three cars at defendant's house, that Herbert Young drove all three of them, and that he obeyed defendant's orders; that it was his business to do what defendant instructed him to do; that defendant often rode in this car; that Herbert Young drove it when defendant rode in it; that Herbert Young took orders from defendant, the latter ordering him where to go and where to carry him, and the chauffeur drove defendant's family, his wife and children, about. While the evidence for defendant tended to show that the defendant's wife paid the chauffeur his wages, yet it also shows that defendant gave to his wife a regular allowance for the purpose of paying the servants.

At the time of the accident, the defendant and his wife were in New York, and there were at his house his two daughters, and his mother-in-law; that on the afternoon of the accident the young lady daughters of defendant had been downtown in this car, Herbert Young being the chauffeur. They testified that they had been home a short while when they heard of the accident, and their evidence tended to show that the car did not leave the house until about 8 o'clock that night, when they had use for the same; that Herbert Young had not been sent downtown or in the direction of Terrace Court for any purpose; that in coming home from town they did not pass by Terrace Court, but came a street one block below; that in coming from town to their home they would be traveling east, while the car that struck the child was going west. The evidence further tended to show that the place known as Terrace Court was owned by the defendant, or that he was largely interested therein.

One Chestnut worked at Terrace Court, and he often went to defendant's house to do anything needed about the car, or about the premises, and the chauffeur Herbert Young frequently went to Terrace Court to get different things needed, or would go after the man at Terrace Court who was in the habit of fixing things around the house; when they wanted Mr. Chestnut to do anything they would send Herbert Young down after him.

The witnesses for defendant consisted of his two daughters, his mother-in-law, and

himself. The chauffeur, Herbert Young, did not testify in the cause, and none of the witnesses for the defendant stated whether or not they knew of his whereabouts, or offered any explanation of his absence.

When the defendant left for New York, he did not give Herbert Young any specific directions as to what he should do with the car—not having had any conversation with him in regard to the same—and could not say whether he had ever given him any directions not to use the car for his private purposes or for any one else.

Upon the conclusion of all the evidence in the case, the bill of exceptions discloses the following to have occurred:

"Thereupon the defendant did ask the court in writing to give the following written charge: 'Gentlemen of the jury, if you believe the evidence in the case, you will find a verdict for the defendant.' Upon said charge the court did indorse upon same the word, 'Given,' and signed its name, and delivered the written charge to defendant's counsel to be read to the jury, to which action of the court in giving said charge the plaintiff did then and there duly except.

"The court then charged the jury, 'Gentlemen, I am going to instruct you to find a verdict for the defendant for want of proof,' to which action of the court the plaintiff did then and there duly except. Thereupon defendant's counsel in open court read to the jury the written charge above referred to, and handed to the jury a verdict already written out, reading as follows, 'We, the jury, find for the defendant, ———, Foreman.'

"The jury then and there impaneled in the box was instructed by the court to sign said verdict, by one of its members as foreman, to which action of the court the plaintiff did then and there duly except."

Bondurant & Smith, of Birmingham, for appellant. Stokely, Scrivner & Dominick, of Birmingham, for appellee.

GARDNER, J. [1, 2] The foregoing statement of the case sufficiently discloses the tendency of the evidence for the respective parties, and a general outline of the questions here presented for review. It is quite clear, of course, that the evidence for the plaintiff sufficiently identifies the car which struck his child as that used by the family of defendant, and that it was in charge of the chauffeur who had for some time been operating the same, for submission of that question to the jury for determination. Liability is sought to be fastened upon the defendant upon the principle of respondeat superior, and the two important questions in all cases of this character are: First, the existence of contractual relation of master and servant, or principal and agent; and, second, whether the act or omission, which is the basis of this particular proceeding, was one performed within the scope of the employment. Babbitt on the Law Applied to Motor Vehicles, § 547.

[3] It is insisted by counsel for appellee that the action of the lower court was jus-tified because of the fact that the evidence was without dispute that the defendant's wife was the owner of the car and that she alone employed and paid the chauffeur. Some of the evidence for the plaintiff, however, tended to show that the car was owned by the defendant, but the evidence of the defendant was to the effect that it belonged to his wife, having been an "anniversary gift," but by whom is not disclosed. If it be conceded, however, that the legal title was in the wife, yet we are persuaded that, under the evidence in this case, this fact would have no material bearing upon the result. The jury was authorized to find from the evidence that the car was in the defendant's possession, used and controlled by him for the pleasure of himself and family, and that although the legal title might, by virtue of the gift, be in the wife, yet full dominion and control was in the husband—the defendant here—for all purposes as to its use for himself and family.

There was evidence tending to show that the chauffeur was under the full dominion and control of, and subject to the orders of the defendant; that defendant had been seen to pay him the sum of $14 which, from the record, we think the jury could infer was for his services as such chauffeur. In addition to this, defendant himself testified that, while in fact his wife paid the chauffeur, it was out of money furnished by him as an allowance for such and other like purposes. We need not here, however, review the evidence in this connection. We are fully persuaded that it is sufficient to authorize the jury in finding that Herbert Young, the chauffeur, was at the time of this accident employed by the defendant in the operation of this particular car which the plaintiff insists struck the child. Levine v. Ferlisi, 192 Ala. 362, 68 South. 269; Patterson v. Milligan, 12 Ala. App. 324, 66 South. 914.

The next question for consideration, and the one of greater importance, is whether or not there was evidence sufficient for an inference that the chauffeur at the time of the accident was acting within the scope of his employment. It is to be noted that the court in the instant case not only gave the affirmative charge for the defendant, but directed the verdict instructing the jury to find the same, which was done without their retirement from the jury box.

In the recent case of Shipp et al. v. Shelton, 193 Ala. 658, 69 South. 102, several of our cases, concerning the action of the court in directing verdicts, are reviewed. Without again entering into a discussion of that subject, it is clearly established that if there is any evidence tending to prove a fact—no matter how slight—the court has no right to take such question from the consideration of the jury. "If there be any evidence which tends to establish the plaintiff's cause, it is error for the court to withdraw the verdict,

because it is not for the court to judge of the sufficiency of the evidence."

As previously stated, the evidence for the plaintiff tended to show that the child was struck by an automobile owned and operated by defendant, and that the car at the time was being operated by the chauffeur who was employed by the defendant for that purpose.

"Where a servant, who is employed for the special purpose of operating an automobile for the master, is found operating it in the usual manner such machines are operated, the presumption naturally arises that he is running the machine in the master's service. If he is not so running it, this fact is peculiarly within the knowledge of the master, and the burden is on him to overthrow this presumption by evidence which the law presumes he is in possession of. It would be a hard rule, in such circumstances, to require the party complaining of the tortious acts of the servant to show by positive proof that the servant was serving the master and not himself." Long v. Nute, 123 Mo. App. 204, 209, 210, 100 S. W. 511.

[4] We approve the substance and logic of the foregoing quotation, although we may not approve the exact language used wherein it is said from such proof a "presumption naturally arises." We think the better expression would be that from such evidence the inference may be drawn that the servant was at the time operating the machine in the discharge of the master's business. And this is, indeed, the language used in the charge under consideration in the above-cited case of Long v. Nute.

"The fact that the defendant was the owner of the automobile, and the chauffeur was in his employ to operate it, was sufficient to make out a prima facie case that the chauffeur was acting within the scope of his employment at the time." Stewart v. Baruch, 103 N. Y. Supp. 577, 93 N. Y. Supp. 161.

See, also, Davids Law of Motor Vehicles, § 225; Huddy on Automobiles (4th Ed.) §§ 281 and 268; Benn v. Forrest, 213 Fed. 763, 130 C. C. A. 277; Christensen v. Christiansen (Tex. Civ. App.) 155 S. W. 995; Shamp v. Lambert, 142 Mo. App. 567, 121 S. W. 770; Moon v. Matthews, 227 Pa. 488, 76 Atl. 219, 29 L. R. A. (N. S.) 856, 136 Am. St. Rep. 902; Levine v. Ferlisi, supra; Patterson v. Milligan, supra.

In the instant case, the testimony for plaintiff was sufficient to make out a prima facie case for the jury under the rule announced in the above-cited authorities.

The rule above quoted from Long v. Nute, supra, seems to be well sustained by the authorities, and we think also by sound reason. This rule was given practical application by this court in Levine v. Ferlisi, supra. Other cases of this court of interest in this connection—though not directly in point—are, Barfield v. Evans, 187 Ala. 579, 65 South. 928; Parker v. Wilson, 179 Ala. 361, 60 South. 150, 43 L. R. A. (N. S.) 87; Armstrong v. Sellers et al., 182 Ala. 582, 62 South. 28.

The case of Slater v. Advance Threshing Co., from the Supreme Court of Minnesota, 97 Minn. 305, 107 N. W. 133, 5 L. R. A. (N. S.) 598, contains an interesting review of many of the authorities upon the general subject as to the liability of the master, and as to whether or not the servant was acting within the line and scope of his employment.

Counsel for appellee insists that the evidence for the defendant clearly shows that the accident did not occur while the defendant's daughters were being brought home in the car late that afternoon, and that they did not again use the car until 8 o'clock that night; the defendant's witnesses testified that they did not hear or see the chauffeur take the car out in the meantime, nor was he told to do so. All this may be conceded, and yet we do not think it would justify the court in directing a verdict for defendant. The credibility of all evidence is for the jury, and, in addition to this, the jury could infer that the chauffeur had implied authority to go upon some mission either concerning some needs of the place or in connection with his duties about the car—either as to supplies or equipment therefor—all without the knowledge of the occupants of the house at that time.

[5] We are persuaded, upon a careful consideration of all the evidence in the case in connection with the rule of inference above noted, that it was for the jury's determination as to whether or not the chauffeur was in the employ of defendant, and at the time was acting within the line and scope of his employment. We may also cite, as of interest, in this connection—though expressing neither approval nor disapproval of the same—the recent case from the Supreme Court of Florida of Anderson v. Southern Cotton Oil Co., 74 South. 975, L. R. A. 1917E, 715.

We therefore conclude that the court committed reversible error in directing a verdict for defendant. Shipp v. Shelton, supra. For this error the judgment is reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.

On Rehearing.

GARDNER, J. Counsel for appellant argue the case as if the only question involved was the giving of the affirmative charge. We think the foregoing opinion distinctly discloses that the reversal of this cause is rested upon the action of the court in directing a verdict for the defendant, and therefore leaving nothing for the determination of the jury.

The evidence on the part of the defendant was of a negative character only, and, in any event, its credibility was for the jury—the consideration of which the action of the court deprived them.

Counsel concede in brief that a chauffeur

regularly employed to operate an automobile need not be directed as to every move, and that he has such implied authority, as to the control and operation of the car, as is necessary and incident to his employment, and might, of course, to quote from the brief of counsel, "take the car back and forth from the garage, and go from one point to another in order to get equipment and tools with which to make repairs, because, as stated, this will be incident to his employment."

In the instant case the chauffeur was neither examined, nor was there any evidence offered as to his whereabouts, or any explanation as to his absence. We have dealt with the case as presented by this record, wherein the court took the case from the consideration of the jury, leaving nothing for their determination as to the credibility of the evidence offered. This, we think, was clearly expressed in the opinion, where, without reviewing the authorities, we contented ourselves by making reference to the recent case of Shipp v. Shelton, upon this question. We have not for consideration the question of the giving of an affirmative charge, which leaves for the jury's determination the credibility of the testimony offered; but for the reversal of this cause is rested, as expressly stated, upon the action of the court as above indicated. We therefore enter into no discussion of the question argued by counsel in brief until the same arises for consideration.

The application for rehearing is therefore denied.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.