(122 So. 816)

## TORANTO et al. v. HATTAWAY.
### (6 Div. 287.)

Supreme Court of Alabama.   June 6, 1929.

Stokely, Scrivner, Dominick & Smith and A. Leo Oberdorfer, all of Birmingham, for appellants.

Fred A. Gibson, Clifford J. Griffith, and David J. Davis, all of Birmingham, for appellee.

BOULDIN, J. Action for personal injuries resulting from an automobile collision. Plaintiff was riding in one of the cars as a guest or passenger. She sues the owner and the driver of the other car.

The primary question here presented is whether J. B. Toranto, the owner, is legally responsible for the negligence of A. M. Rudderman, the driver, under the doctrine of respondeat superior. Appellant Toranto insists he was entitled to the affirmative charge.

Plaintiff introduced the answers of defendant Rudderman to statutory interrogatories. On the issue now before us, these answers disclosed in substance and effect: The car was owned by J. B. Toranto. Witness was driving it at the time. The car had been in his possession about 30 minutes; was using it at the request of Al Toranto; was to get the automobile and bring it to Al Toranto, as he was unable to drive; was going to Thirteenth street and Eleventh Avenue South, in Birmingham; the accident occurred at Eighteenth street and Avenue F.; was not employed by J. B. Toranto at that time; was living at the time at Mrs. Ringold's home.

Further testifying as a witness on his own behalf, Rudderman said in substance: Witness got the car at Twenty-First street and Fourth avenue; the car had a puncture at that point, "and some other fellows had taken us to the house. It started raining and Al Toranto requested me to get the car and bring it to him, as he had hurt his arm and was unable to drive the car. I did not get the car from this defendant here (J. B. Toranto). I was not in his employment at that time." On cross-examination witness testified in effect: J. B. Toranto was in the business of conducting the Vanity Boot Shop; Al Toranto was a brother, working in that shop; Rudderman was a friend of Al. "I came from Atlanta to keep the boy (Al Toranto) company, because he was a stranger here. * * * I worked there a couple of weeks. I was not working there at that time. I don't know whether they had a manager at the store while I worked there. I could not say who hired me. He hired me to come over and keep him company. Possibly he hired me just to sit around to look at. I didn't know anything about selling shoes. I sold very few shoes. I tried to. Joe Toranto came back from up north somewhere, and when he came back my job went. I didn't know Joseph Toranto until that time. I had seen him. I cannot recollect that I had driven the car while I was working in Joseph Toranto's shop. I don't remember that I drove it at all, then. Al Toranto used the car occasionally when he had a date. That is the only time I knew of. I only worked for Al Toranto two weeks. I did that to keep him company. I imagine I was hired. I didn't receive any weekly salary. I just stayed around there. Al was too young a man to handle the store himself, and he was new in the store, and there were some old salesmen there that knew more about it. * * * I didn't know who was in charge of the business. Joseph B. Toranto was not in town. I had driven that car before. I could not say exactly when. I have ridden in the car. I imagine I have driven it myself once or twice, before then. I hadn't driven it for Joseph Toranto. I didn't even know Joseph Toranto at that time. I didn't know him at all. I do not remember how many times I had driven the car before. I never delivered any shoes with it."

Rudderman further testified he was 22 years of age. The accident occurred on a rainy Sunday evening, January 31, 1926. This was all the testimony on this issue before the jury.

We have thus presented the evidence in detail, that any omissions or other features tending to weaken the testimony or afford ground for reasonable inference connecting J. B. Toranto with this collision may be considered.

Appellee relies upon the presumption arising from ownership of the car; and while conceding the plaintiff's evidence shows Rudderman was not in the "employment" of the owner, still insists Rudderman may have been in the "service" of and acting for him so as to render the owner liable, and that the evidence is not so strong, clear, and undisputed as to overcome the presumption and call for the affirmative charge.

Beginning with the well-considered case of Penticost v. Massey, 201 Ala. 261, 77 So. 675, it was declared that proof of the ownership of the car, and further proof that the negligent driver was his chauffeur, or in other employment involving the driving of a car in the conduct or promotion of the business in which he is employed, raises a presumption that the driver was acting within the line and scope of his employment at the time. Following the lead of authorities,

quoted and cited, from other states, the basis of the presumption so declared is that the owner in such case has special knowledge of the relation between him and his servant, and is in better position to show whether the servant has gone outside the scope of his employment on a mission of his own.

■ This rule was reaffirmed on second appeal (Massey v. Pentecost, 206 Ala. 411, 90 So. 866), where it was said on the authority of Dowdell v. Beasley, 205 Ala. 130, 87 So. 18: "If the [rebutting] evidence is strong, clear, convincing, and undisputed," the defendant is entitled to the affirmative charge. In the Massey Case the rebutting evidence was held not sufficient to warrant the affirmative charge, and in the Dowdell Case held that it was.

Ætna Ex. Co. v. Schaeffer, 209 Ala. 77, 95 So. 351, and Rooks v. Swift & Co., 210 Ala. 364, 98 So. 16, were other cases where there was proof not only of ownership of the car in defendant, but proof that the driver was his chauffeur or other employé or servant engaged in driving the car in the course of the master's business.

In Ford v. Hankins, 209 Ala. 202, 96 So. 349, the rule was stated thus: "That proof of defendant's ownership of an automobile causing injury was sufficient to authorize the inference that the driver at the time was employed by defendant owner and was acting within the scope of his employment."

In that case the rebutting evidence related to ownership of the car; was at variance with the tag and license record showing ownership in defendant; held not so clear and undisputed as to call for the affirmative charge.

The rule above quoted from Ford v. Hankins was followed in Freeman v. Southern Life & Health Ins. Co., 210 Ala. 459, 98 So. 461. Held the undisputed evidence showed the driver had possession of the car as a contractor for the purpose of making repairs, and that the affirmative charge was properly given for the owner.

In Tullis v. Blue, 216 Ala. 577, 114 So. 185, speaking of the presumptions of agency and of acting within the line and scope of authority, it was said: "It is well settled that those presumptions do arise from proof of the defendant's ownership of the vehicle; but it is well settled also that they are prima facie presumptions merely, or, as they are sometimes called, administrative presumptions, based upon considerations of fairness and convenience in placing the burden of proof. They are not in themselves evidence, and in practice their effect is merely to impose upon the defendant the burden of showing that the driver was not his agent, or that, if he was, he was not acting within the scope of his authority or in the course of his employment. If the evidence thereon is in conflict, or leads to doubtful inference only, the issue should go to the jury. If,

however, the evidence, without dispute, rebuts the facts thus presumed, there is no issue for the jury, and the general affirmative charge should be given for the defendant on request"—citing the several cases above reviewed. See, also, Alabama Power Co. v. Watts, 218 Ala. 78, 117 So. 425; Potts v. Pardee, 220 N. Y. 431, 116 N. E. 78; 8 A. L. R. 785.

In the Tullis Case it was held that on the clear, undisputed testimony of the owner the driver was not working for him; was not out on the owner's business, nor with his knowledge; it was held the affirmative charge was due the owner.

■ In the nature of the case the presumption indulged where the negligent driver is shown to be a regular chauffeur, or employé using the car in the master's business, is stronger than where there is mere proof of ownership.

Evidence to prove one has been acting as chauffeur, or has been driving the car in his master's business, is usually quite available to plaintiff. Just what the driver's mission was at the time may be much more difficult for plaintiff to prove.

Here the evidence is without dispute that the driver was not in the employ of the owner; that he had never driven the car for him; that the short time he was employed was not in a business implying the use of a car as an incident thereto; that in fact the owner was out of town at the time. Moreover, the evidence is clear and emphatic that he was driving the car at the command or request of another, Al Toranto.

■ It appears Al only used the car when he had "dates." Nothing indicates Al was out on any mission for his brother, the owner, that Sunday afternoon or evening. If we could indulge the presumption that Al Toranto was acting within the relation of master and servant toward his brother in having the car out, this would not imply any authority to call upon another to drive the car as agent of his brother. He must be shown to have authority to engage another driver on behalf of and as employé or servant of his brother; have authority to create the relation of master and servant between the owner and another for the purpose of driving the car at the time. It would be a most dangerous extension of the doctrine of respondeat superior to permit one merely authorized to use another's car to turn it over to whom he may elect, and thus impose a liability on the owner for the negligence of one whom he has never known nor authorized to operate a car for him. Armstrong v. Sellers, 182 Ala. 582, 62 So. 28; Parker v. Wilson, 179 Ala. 361, 60 So. 150, 43 L. R. A. (N. S.) 87; note to Thixton v. Palmer (Ky.) 44 A. L. R. 1383.

■ We may concede that, in applying the master and servant doctrine to cases of this sort, the term "servant" may have a broader

meaning than "employé." A minor child subject to the orders of the parent, while not an employé, may be the agent or servant of the parent in executing his commands. Broadly speaking, any one subject to the orders of the master, while acting pursuant to such orders, is his servant.

But the proof here negatives the relation of master and servant quite as positively as that of employer and employé in the ordinary sense. Appellee concedes on his own proof the driver was not in the employment of the owner.

We cannot sustain the view that the **evidence** made a case for the jury on some other undefined form of service for which the master could become liable. The affirmative charge was due defendant J. B. Toranto. Its refusal was error.

Without going into details, we are not satisfied this is a case where a reversal should inure to only one defendant. Both prosecute appeals. Sprague v. Daniels Elgin & Co., 31 Ala. 444; Young v. Woodward Iron Co., 216 Ala. 335, 113 So. 223.

The judgment is reversed in its entirety as to both defendants, and the cause is remanded.

Reversed and remanded.

All the Justices concur.