154 So. 105

## ALABAMA POWER CO. v. McGEHEE.
### 3 Div. 92.

Supreme Court of Alabama.
March 1, 1934.

Rehearing Granted April 12, 1934.

Steiner, Crum & Weil, of Montgomery, and Martin, Turner & McWhorter and Walter Bouldin, all of Birmingham, for appellant.

506

Thos. B. Hill, Jr., and Wm. Inge Hill, both of Montgomery, for appellee.

BROWN, Justice.

This is an action on the case to recover damages for injuries inflicted on the plaintiff's person, resulting from the overturning

of an automobile in which he was riding, returning from Anderson's Camp to Montgomery along a public highway "known as the old Birmingham Highway."

The first count of the complaint ascribes plaintiff's injuries to the negligence of the defendant's agents, servants, or employees, acting within the scope of their employment "in negligently excavating across said road, or public highway aforesaid, a hole of a width of about five feet and of great depth," into which said automobile was driven and caused to overturn.

The second count ascribes the injuries to the defendant's agents, servants, or employees while acting within the scope of their employment in making such excavation and negligently leaving the same "wholly unguarded and untended or insufficiently guarded and tended for an unreasonable length of time before said accident."

The pleas were the general issue and contributory negligence, pleaded in short by consent.

The evidence is without dispute that some years prior to the occurrence out of which this litigation arose the defendant constructed and maintained railroad tracks which intersected the highway about 6 miles north of Wetumpka in Elmore county. These tracks were used by the defendant in connection with the construction of one of its power dams nearby, but had not used them for two or three years prior to the plaintiff's injury, and in the meantime the road machines used by the public authorities in maintaining the highway had dragged or thrown gravel and dirt over the tracks, which were located in a slight depression in the highway, in such sort as that a locomotive could not pass along the tracks across the highway without the removal of the dirt and gravel; that, shortly before the occurrence of plaintiff's injury, defendant, desiring to abandon the railroad and remove the rails and ties, removed the dirt and gravel from the railroad tracks so that it could use its locomotive and cars in taking up and removing the rails and ties.

The evidence is in dispute as to the depth of the excavation, the defendant's evidence going to show that there was no excavation on the east side of the highway, but that the dirt and gravel were scraped off the tracks and along the side of each track so as to allow the flange of the drivers on the locomotives to pass over without derailing, but on the west margin of the highway there was an excavation of about three inches, the work being done with shovels by the defendant's employees. Where the dirt was removed alongside the rails, the excavation was 3 or 4 inches.

The evidence offered by the plaintiff, on the other hand, tended to show that the excavation was from 4 to 14 inches deep.

The evidence further shows that "stop, look and listen" signboards were maintained on each side of the railroad, some distance therefrom; that these had been placed when the railroad was first constructed and while in actual use; that defendant had not used this railroad since 1929, up until about ten days before plaintiff's injury.

The evidence further shows that defendant placed red flags on sticks either driven into the ground or in old cross-ties near the railroad tracks on the west margin of the highway, standing about 3½ feet high, and at night on one of these sticks a red lantern was hung on a nail clearing the cross-tie about 2 inches, and about 10 or 12 feet from the railroad tracks.

The defendant's evidence further tended to show that the weeds growing along the margin of the highway, on defendant's right of way, had been cut, and that the stick with the lantern hanging on it was on the right of way where the weeds were cut.

The highway from the north approached the railroad tracks around a curve, the inside of the curve being on the west, the curve ending, as defendant's evidence goes to show, by actual measurements, 310 feet before the highway reached the railroad crossing, and that the lantern was visible 360 feet from the crossing.

The plaintiff's evidence, on the other hand, tended to show that the curve led up to within 50 feet or near to the crossing, and the lighted lantern was not visible, if at all, until a traveler along the highway approaching from the north reached the end of the curve.

The automobile in which plaintiff was riding—a roadster with rumble seat—driven by Frank Williford, approached the crossing from the north about 1 o'clock a. m., on August 14th, 1932, ran into the depression at the railroad crossing, causing Williford to lose control and land in the cotton field some distance from the crossing and turn over, injuring the plaintiff.

A young lady was riding on the front seat with Williford, and the plaintiff and Carter Christie were on the rumble seat.

The testimony of plaintiff, Williford, and Christie was to the effect that the automobile

approached the crossing at the rate of from 30 to 35 miles per hour. There was evidence offered by the defendant, and circumstances attending the wreck of the automobile, tending to show that it was running at a greater rate of speed.

The appellant's first contention is that there is no basis in the evidence to warrant a finding by the jury that the defendant's agents or servants were guilty of negligence proximately causing the plaintiff's injury. To sustain this contention, appellant advances two theories: (1) That the evidence is insufficient to warrant an inference of negligence, because the defendant was under no duty to maintain the crossing on the highway grade, nor does it warrant an inference that the defendant "could have made a less excavation than it did"; and (2) that the evidence shows, without room for adverse inference, that the negligence of Williford, the driver of the automobile, was the sole proximate cause of the injury. That this negligence was an efficient intervening cause.

■ The law is well settled that "the owner of a railroad, operating it across a public road, is under the legal duty to maintain the crossing in a condition reasonably safe and convenient for use by those traveling the public road." Southern Railway Co. v. Posey, 124 Ala. 486, 26 So. 914, 916. And in the performance of this duty such owner and operator cannot ignore matters of common knowledge, that what might be a reasonably safe condition for the use of the horse-driven vehicle may not be reasonably safe for the automobile designed for more rapid transportation.

To state the proposition in other words, what is or is not a reasonably safe condition must be determined in the light of "the condition of public travel" to which the highways are subject. Southern R. Co. v. McCourry, 221 Ala. 600, 130 So. 216; Gulf, M. & N. R. Co. v. Havard, 217 Ala. 639, 117 So. 223.

■ In the light of the evidence, its tendencies and conflicts, we are clear to the conclusion that the questions whether or not defendant's agents or servants were guilty of negligence, whether or not the removal of the dirt from the railroad tracks rendered it dangerous to public travel, and, if so, whether or not defendant took reasonable and proper precautions to warn travelers on the highway of the danger, were for the jury.

It must be conceded that there was evidence tending to show that Williford, the driver of the car, was guilty of negligence in driving the car over the crossing at a high rate of speed.

Defendant offered evidence going to show that the automobile passed over the crossing at such rate of speed that it left the road 132 feet from the crossing and passed over an embankment on the roadside some 2 or 3 feet high and turned over in a cotton field 192 feet from the crossing, without leaving any visible signs of its approach to the field—as appellant puts it, "it literally sailed through the air."

■ However, if defendant's agents, servants, or employees were, under the circumstances, guilty of negligence, it is clear Williford's negligence was not the sole proximate cause of the injury, but was a concurring proximate cause of the injury, and cannot avail to relieve the defendant from liability, unless Williford's negligence is imputable to plaintiff under the law of agency; that is, that Williford was the servant of plaintiff, or they were engaged in a joint adventure, each being the agent of the other in the furtherance of such adventure. Alabama Power Co. v. Bass, 218 Ala. 586, 119 So. 625, 63 A. L. R. 1; Hood & Wheeler Furniture Co. v. Royal, 200 Ala. 607, 76 So. 965; Whiddon y. Malone, 220 Ala. 220, 124 So. 516; Hall v. Seaboard Air Line R. Co., 211 Ala. 602, 100 So. 890.

The testimony showing the relation between the plaintiff and Williford was, in short, that the plaintiff purchased the automobile in which he was riding from E. P. Manning, about a year before he was injured, giving his notes therefor, due in installments of $20 each, and Williford agreed with him to pay one-half of the purchase price, and was to have the automobile half of the time, each having the use and control of the automobile two weeks at a time. The license for the car was taken out by plaintiff in his name, but was paid for by Williford. Up to the time of plaintiff's injury, they had each paid one-half of the maturing installments. A week before the plaintiff's injury, Williford had had the car in his possession and control, and it was his to use and control for another week.

On the occasion of the injury, Williford invited plaintiff, Christie, and the young lady to accompany him to the dance at Anderson's Camp, and plaintiff paid for the gas used on the trip.

While the car was in the custody and control of Williford, as they each testified, plaintiff was without right of control over it or over Williford while driving the car.

Plaintiff testified that he purchased Willi-

ford's interest in the automobile after the wreck, and at the time of the trial Williford had no interest in the automobile.

Our decisions are clear to the effect that proof of ownership of an automobile causing injury raises an administrative presumption that the person in possession and control of the automobile is the agent or servant of the owner, and is acting within the line and scope of his employment. Walker v. Stephens, 221 Ala. 18, 127 So. 668; Newell Contracting Co. v. Berry, 223 Ala. 109, 134 So. 870; Cruse-Crawford Mfg. Co. v. Rucker, 220 Ala. 101, 123 So. 897.

The effect of these presumptions as stated in Tullis v. Blue, 216 Ala. 577, 578, 114 So. 185, 187, is: " * * * They are prima facie presumptions merely, or, as they are sometimes called, administrative presumptions, based upon considerations of fairness and convenience in placing the burden of proof. They are not in themselves evidence, and in practice their effect is merely to impose upon the defendant (the owner of the car) the burden of showing that the driver was not his agent, or that, if he was, he was not acting within the scope of his authority or in the course of his employment. If the evidence thereon is in conflict, or leads to doubtful inference only, the issue should go to the jury. If, however, the evidence, without dispute, rebuts the facts thus presumed, there is no issue for the jury, and the general affirmative charge should be given for the defendant on request. Dowdell v. Beasley, 205 Ala. 130, 87 So. 18."

The evidence clearly rebuts the presumption that Williford was the employee of the plaintiff on the occasion in question. Under the arrangement between plaintiff and Williford, for the time being, all of the elements of ownership and control vested in Williford during the weeks he was entitled to the custody and use of the automobile. And the absence of the element of the right of control jointly with Williford during the period of his right to use the car excludes the thought of joint adventure. Newell Contracting Co. v. Berry, supra.

When these principles are applied, it is clear that the several rulings of the trial court here complained of were sound, and the judgment should be affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.

On Rehearing.

BROWN, Justice.

Special charges 1 and 2 given by the court at the insistence of the plaintiff were without hypothesis, and the question of fact involved depended on oral testimony, and its credibility should have been submitted to the jury. Shipp et al. v. Shelton, 193 Ala. 658, 69 So. 102; Penticost v. Massey, 201 Ala. 261, 77 So. 675; Scott v. State, 110 Ala. 48, 20 So. 468.

For the error in giving these charges, the rehearing is granted, the judgment of affirmance is set aside, and the judgment of the circuit court is reversed and the cause remanded.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.