69 So.2d 454

**SCHOENITH, Inc.**

v.

**FORRESTER et al.**

4 Div. 746.

Supreme Court of Alabama.

Dec. 17, 1953.

Rehearing Denied Jan. 21, 1954.

Oliver W. Brantley, Troy, for appellees.

E. C. Orme, Troy, for appellant.

LAWSON, Justice.

Shortly after dark on Sunday night, February 17, 1952, at a point a few miles northwest of Brundidge on that part of U. S. Highway 231 situate between Brundidge and Troy in Pike County, Alabama, there was a collision between a truck owned by W. J. Forrester and Hobson Eddins, which was being driven by a colored employee by the name of Ike Lee, and an automobile being driven by Kirby C. Floyd. The truck was moving in a southeasterly direction, toward Brundidge, and the automobile in a northwesterly direction toward Troy.

W. J. Forrester and Hobson Eddins, doing business as Sanitary Dairy, brought this suit in the circuit court of Pike County against Kirby C. Floyd and Schoenith, Inc., a corporation, for damages caused to their truck by the collision.

The case went to the jury upon Count 1 of the complaint, which charged simple negligence, and the defendants' plea of the general issue. Count 2 of the complaint, which charged wantonness, was amended out before the case went to the jury.

The verdict of the jury was in favor of the plaintiffs against both defendants. Judgment was in accord with the verdict. The motion for new trial filed by the defendant Schoenith, Inc., having been overruled, it has appealed to this court. The defendant Floyd has not appealed.

In order for the plaintiffs to recover against the defendant Schoenith, Inc., it was necessary for the plaintiffs to show not only that the negligence of Floyd was the proximate cause of the damage to their truck, but that Floyd, the driver of the automobile, at the time of the collision was an agent of Schoenith, Inc., acting within the line and scope of his authority. Cox v. Roberts, 248 Ala. 372, 27 So.2d 617.

The testimony given by the witnesses called in behalf of the plaintiffs relates only to the circumstances surrounding the accident. It seems to be conceded by appellant that such evidence presented a question for jury decision as to whether the negligence of Floyd was the proximate cause of the damage to appellees' truck and that as to that question the verdict and judgment are amply supported by the evidence.

No witness called by the plaintiffs gave testimony going to show that at the time of the collision Floyd, the driver of the automobile, was an agent of Schoenith, Inc., and was acting within the line and scope of his employment.

However, before the taking of testimony began it was stipulated in open court, among other things, as follows: "* * * that the automobile being operated by the Defendant Floyd was the property of the Defendant Schoenith, Inc."

The defendants called two witnesses, the defendant Floyd, the driver of the automobile, and W. T. Hairr, an assistant sales manager of the defendant Schoenith, Inc.

Floyd's testimony, other than that which relates to the charge of negligence, is hereafter summarized:

Floyd had an established home in Troy, Alabama, where his wife and family lived. During the first part of February, 1952, he was employed by Schoenith, Inc., as a candy salesman. He was to work out of Andalusia and to cover the territory within a radius of twenty-five miles of that city. Shortly after his employment Floyd was sent to Charlotte, North Carolina, where he worked with another salesman for about one week in order to familiarize himself with his employer's methods of doing business.

His period of training having been completed, a new 1952 Studebaker automobile was turned over to Floyd by Schoenith, Inc. The trunk and back seat of the automobile were loaded with candy belonging to Schoenith, Inc.

On Saturday morning, February 16, 1952, Floyd left Charlotte in the Studebaker automobile loaded with candy, under instructions to be in Andalusia, Alabama, on

Sunday afternoon, February 17, 1952, so that he could begin his work on the following morning. Floyd was given no instructions as to the route which he should follow in proceeding from Charlotte, North Carolina, to Andalusia, Alabama. He was free to choose the route he would follow.

Floyd, driving the aforementioned Studebaker automobile, entered Alabama at Eufaula. From Eufaula he went to Clio and from Clio to Brundidge. When he reached Brundidge, which was only about ten miles from Troy, he entered U. S. Highway 231 and proceeded in the direction of Troy, but stopped at "Jim Ballard's place" located about three miles southeast of Troy. Later, he left Jim Ballard's place and drove through Troy, coming within a block of his home, and proceeded to "Sergeant Kelly's place" located approximately four miles north of Troy on the Montgomery highway. He remained there approximately an hour and then drove back through Troy and stopped again at Jim Ballard's place, where he remained until midnight. At midnight he drove in a southeasterly direction on U. S. Highway 231 to Brundidge and then drove to "Bogum Senn's place" located four or five miles south of Brundidge on U. S. Highway 231. He remained at the latter place until late in the afternoon or the early part of Sunday night, February 17, 1952, when he drove the Studebaker automobile back through Brundidge and was on U. S. Highway 231 between Brundidge and Troy when the collision occurred.

According to Floyd, at the time of the collision he was driving the corporate defendant's Studebaker automobile, loaded with its candy, to Andalusia, Alabama, where he was to begin his work on Monday morning. There is nothing in Floyd's testimony tending to show that he expected to even stop at his home in Troy.

It also appears without dispute in the evidence that having entered Alabama at Eufaula, Floyd, in driving to Brundidge, was following a direct route to Andalusia and it also clearly appears that in proceeding from Brundidge to Andalusia it would be proper for Floyd to drive through Troy in order to follow the most direct route.

The testimony of W. T. Hairr is in substance as follows:

As assistant sales manager of Schoenith, Inc., he employed Kirby C. Floyd along about the middle of February, 1952, and then sent him to Charlotte, North Carolina, for a week of training.

On his direct examination this witness testified that Floyd on his return trip from Charlotte was to spend Saturday night, February 16, 1952, with his family in Troy and to proceed to Andalusia on Sunday afternoon, February 17, where he was to get a place to stay and a place to store his candy and then was to meet the witness on Monday morning ready to go to work. The witness was to call Floyd at the latter's residence on Sunday, February 17, 1952, in order to find out where to meet him in Andalusia the following Monday morning.

On cross-examination the witness admitted that he had not instructed Floyd to spend Saturday night, February 16, 1952, with his family in Troy, but had merely suggested it. He further testified on cross-examination that his company did not undertake to tell its representatives where they were to sleep and did not so tell Floyd. He also admitted that Schoenith, Inc., didn't tell Floyd which route to take from Charlotte to Andalusia. It didn't give him a road map and mark the route and tell him which roads to travel. During the course of the cross-examination of this witness the following transpired: "Q. In other words, Andalusia was his destination and it was his job to get that car and that load of candy and himself down there by such route as he chose to travel and to sleep where he chose to sleep en route and to eat where he chose to eat en route. Isn't that so?" Answer, "That is right."

■ The admission by Schoenith, Inc., that it was the owner of the automobile driven by Floyd was tantamount to proof of that fact by plaintiff. Cox v. Roberts, supra.

■ It is well established by our decisions that when a plaintiff in a damage

suit for the negligent operation of an automobile proves that the car causing the damage was owned by the defendant, the law raises the presumption that the person who was operating the automobile at the time of the collision was operating it as the owner's agent and was acting within the line and scope of his authority. Cox v. Roberts, supra, and cases cited there: Rogers v. Hughes, 252 Ala. 72, 39 So.2d 578.

In Craft v. Koonce, 237 Ala. 552, 554–555, 187 So. 730, 731, in treating of the nature of this presumption, it was said:

"This is a procedural expedient and takes the place of evidence respecting matter peculiarly known to defendants, but necessary to sustain plaintiff's cause of action, and is distinguishable from an inference of fact properly deducible from what is proven. When plaintiff proves such ownership of the car by defendant, and thereby brings into being the presumption to which we have referred, he need not offer further proof that the operator of the car was the agent of defendant, and in the line and scope of his authority, until and unless defendant has offered proof that he was not acting for defendant in the line and scope of his authority. And if defendant makes that proof and it is not contradicted, either expressly or inferentially, defendant is entitled to the affirmative charge. But if there is any evidence which reflects upon the credibility of that evidence by defendant on that question, or from which an inference may be drawn to a different result, whether such evidence was produced by defendant or plaintiff, the question of whether the operator of the car was defendant's agent acting in the line and scope of his authority should be submitted to the jury."

See Tullis v. Blue, 216. Ala. 577, 114 So 185; Cruse-Crawford Mfg. Co. v. Rucker, 220 Ala. 101, 123 So. 897.

Based on the assertion that the rebutting evidence was strong, clear and undisputed to the effect that Floyd at the time of the collision was not acting within the line and scope of his authority, the appellant Schoenith, Inc., contends that the trial court erred to a reversal in refusing to give at its request the following written charge: "2. I charge you, Gentlemen of the Jury, that you should not find for the Plaintiff against the Defendant, Schoenith, Inc., a corporation, under Count 1 of the Complaint."

Even if it be conceded, which we do not, that the evidence was so strong, clear and undisputed to the effect that Floyd was not acting within the line and scope of his authority as to have entitled Schoenith, Inc., to the general affirmative charge with hypothesis, if requested, the fact remains that no such charge was requested in so far as this record discloses.

Charge No. 2 quoted above is not the general affirmative charge with hypothesis, but is a charge which calls for a directed verdict in favor of the corporate defendant, leaving nothing for the jury's determination as to the credibility of the evidence offered.

■ A directed verdict for the defendant can only be justified upon the theory that the plaintiff, upon whom rests the burden of proof to establish his right to recover, has wholly failed to adduce evidence to support his cause of action, or that the testimony of the plaintiff's own witnesses, without conflict, makes out the defense of the opposing party. If plaintiff makes out a prima facie case and the defense is dependent upon oral testimony, the court must leave the credibility of the evidence to the jury and not direct a verdict for the defendant. Byars v. Alabama Power Co., 233 Ala. 533, 172 So. 621, and cases cited there. See 1 Jones' Alabama Jury Instructions, §§ 273, 274, p. 49.

■ As shown above, the admission by Schoenith, Inc., that it was the owner of the automobile made out a prima facie case for the plaintiff except as to the charge of negligence and imposed on Schoenith, Inc., the burden of going forward with the evidence and showing that Floyd was not its agent or, if so, that he

was not acting within the line and scope of his authority. This burden Schoenith, Inc., sought to meet by oral testimony, the credibility of which was for the jury. Hence, Charge 2 requested by the defendant Schoenith, Inc., was properly refused. Penticost v. Massey, 201 Ala. 261, 77 So. 675; Alabama Power Co. v. McGehee, 228 Ala. 505, 154 So. 105.

The only other contention made by appellant is that the verdict and judgment were rendered against the great weight of the evidence and that, for this reason, the appellant's motion for new trial should have been granted. We cannot agree.

 We are not unmindful of the general rule that an employee using an automobile, whether belonging to his master or to himself, in going to and from his place of work is not at such times regarded as engaged in work for his master but is acting solely for his own purposes. Smith v. Brown-Service Ins. Co., 250 Ala. 613, 35 So.2d 490. But the evidence here cannot be stretched to bring this case within the influence of that rule. We understand the evidence to show almost without contradiction that at the time of the collision Floyd was engaged in work for his master, the appellant here. Under instructions from his employer, Floyd was transporting a large quantity of his employer's merchandise from Charlotte, North Carolina, to Andalusia, Alabama, where such merchandise was to be sold. The mere fact that in going from Charlotte, North Carolina, to Andalusia, Alabama, Floyd chose a route which would take him through his home town cannot be said as a matter of law to bring this case within the influence of the rule stated above.

If Floyd had spent Saturday night, February 17, 1952, at his home in Troy and if on the following morning he had driven from Troy to Andalusia this particular accident would not have occurred, for then Floyd would have driven away from the point where the collision took place. But Floyd elected to spend a part of Saturday night in roadhouses. The remainder of that night and most of Sunday he stayed

at a tourist court below Brundidge. As a result of this action the collision occurred on Sunday night at a point which Floyd had passed on Saturday night as he drove from Brundidge to Troy in the general direction of Andalusia. But the weight of the evidence is to the effect that Floyd was free not only to choose the route which he was to travel but also the place where he was to stay on Saturday night, February 16, 1952. We are not concerned here with Floyd's actions prior to the time of the collision, for the great weight of the evidence is to the effect that at the time the collision occurred Floyd was driving appellant's automobile on a direct route to Andalusia, Alabama, the point where he was ordered to go. We are of the opinion that the question of appellant's responsibility was for the jury and having been found against appellant, should now be left as the trial court left it. Ford v. Hankins, 209 Ala. 202, 96 So. 349.

The judgment of the circuit court is affirmed.

Affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.