(90 South. 866)

## MASSEY v. PENTECOST. (6 Div. 53.)

(Supreme Court of Alabama. June 30, 1921. Rehearing Denied Oct. 6, 1921.)

**1. Pleading ☞20—Each disjunctive averment must state cause of action.**

Each disjunctive averment in a count of a complaint in a negligence case must state a cause of action, if not, the count is defective, and demurrer should be sustained.

**2. Death ☞47—Complaint must show wrongful act.**

All willful or intentional homicides are not wrongful, and a complaint in an action for death must do more than show that the homicide was willful or intentional, under Code 1907, §§ 2485, 2486.

**3. Death ☞47 — Complaint held to charge wrongful death of pedestrian.**

In an action under the homicide statutes (Code 1907, §§ 2485, 2486), a count alleging that deceased was run over by an automobile in a street intentionally or willfully by defendant or his agent or servant was sufficient to show by implication, if not expressly, that the killing was wrongful and was not done in justification or in self-defense, although the word "wrongful" was not used.

**4. Appeal and error ☞345(1)—Bill of exceptions looked to only as to matters contained in motion for new trial where not filed within 90 days after judgment.**

A bill of exception purporting to set out all the evidence, presented more than 90 days after judgment was entered on the verdict of the jury, but within 90 days after judgment was entered on motion for new trial, can only be looked to as to matters contained in the motion for new trial under Code 1907, §§ 3019, 3020, and section 2846, as amended by Acts 1915, p. 722.

**5. Master and servant ☞330(1)—Chauffeur's act presumed to be in line of employment.**

In action for death of child killed on public street by an automobile running 35 miles an hour, and operated by defendant's chauffeur, the law presumes that the chauffeur was acting in the line and scope of his employment, and plaintiff was entitled to recover unless this presumption was rebutted by evidence of the defendant.

**6. Evidence ☞243(4)—Admission of defendant's chauffeur held admissible.**

In action for death of child in city street when struck by automobile, where plaintiff's witnesses testified that it was driven by defendant's chauffeur, and defendant's witnesses to the contrary, and the chauffeur himself did not testify, a confession made by the chauffeur that he ran over the child was admissible.

**7. Master and servant ☞330(2)—Evidence of arrests immaterial on issue of identity of automobile injuring child.**

In an action for death of child run over by automobile, alleged to have been driven by defendant's chauffeur, court did not err in sustaining plaintiff's objection to question asked defendant, "Do you know how many chauffeurs, different men, they had arrested for this same thing?"

**8. Evidence ☞471(8)—Witnesses ☞248(3) —Part of answer to question held properly excluded as not responsive to question and a conclusion.**

In action for death of child run down by defendant's chauffeur, where defendant was asked on cross-examination, "Did you give him [the chauffeur] orders when you went to New York not to take the car?" and answered: "I did not give H. any instructions to be subservient to or obedient to the orders of Mrs. S. * * * I didn't give him any orders at all, because he knew he had no business to take it" —the court properly excluded the clause "because he knew he had no business to take it," not being responsive to the question, and stating a conclusion.

**9. Witnesses ☞275(2)—Cross-examination of defendant held not improper.**

In action for wrongful death of child killed by automobile driven by defendant's chauffeur, it was proper cross-examination to ask defendant concerning plaintiff's main witness, who had at one time been in defendant's employ, "Did you testify here on the former trial that you had never written C. or asked C. to come to this office to talk about this car?"

**10. Witnesses ☞274(2)—Witness testifying to good character may be asked whether he has heard nothing derogatory against person.**

A witness testifying to the good character of another witness may be asked whether or not he has ever heard anything derogatory against his good name, so long as no particulars are asked or given.

**11. Witnesses ☞37(4) — Witness properly permitted to testify to good reputation.**

One who testified that he knew witness about five years, that he had worked for him a

year or year and a half, did not reside close to where he lived, and knew his general reputation at the place where he worked, was properly permitted to testify that the witness's reputation was good, and that he would believe him on oath in a court of justice.

**12. Master and servant ☞329—Proof required under alternative allegations in complaint for chauffeur's negligence.**

In action for death of child run down by automobile operated by defendant's chauffeur, where complaint charged in the alternative that defendant owned or was operating the automobile, it was incumbent to prove one or the other alternative to the reasonable satisfaction of the jury.

**13. Master and servant ☞332(4)—Instruction on liability for chauffeur's negligence held proper.**

In an action for death of a child alleged to have been run down by an automobile driven by defendant's chauffeur, where it was alleged that defendant owned or was operating the automobile, it was not error to charge, "It made no difference, or makes no difference whether Mr. M. [defendant] actually owned the car or not, but it is a question of issue of fact whether or not he was responsible for its operation or control by the chauffeur on that occasion," where it was made clear that to warrant a recovery the proof must show that defendant was operating the automobile by a chauffeur at the time of the injury.

**14. Master and servant ☞332(2)—Scope of chauffeur's employment held for jury.**

In action for death of child run down by an automobile alleged to have been driven by defendant's chauffeur, whether the chauffeur was acting in the line of his employment at the time *held* for the jury.

Anderson, C. J., and McClellan, J., dissenting.

Appeal from Circuit Court, Jefferson County; John C. Pugh, Judge.

Action by S. Pentecost, as administrator of the estate of Pauline Pentecost, deceased, against Richard W. Massey. Judgment for the plaintiff, and defendant appeals. Affirmed.

The following is the complaint:

"Count 1. The plaintiff, as administrator of the estate of Pauline Pentecost, deceased, claims of the defendant the sum of $15,000 as damages for that heretofore and on, to wit, the 19th day of December, 1913, the defendant owned an automobile which was being operated upon the streets of Birmingham, Jefferson county, Ala., by an agent or servant of the defendant. And plaintiff avers that on, to wit, the aforesaid day and date, the said automobile, being operated by defendant's agent or servant, ran over plaintiff's intestate, causing her to sustain injuries from which she afterwards died, wherefore plaintiff sues. And plaintiff avers that the proximate cause of the death of his said intestate was the negligence of defendant's said agent or servant, who was acting within the line and scope of his employment

at the time, in this, that he negligently caused plaintiff's intestate to sustain the injuries from which she afterwards died."

Count 2. For the second count of the complaint, plaintiff incorporated all of that part of the first count down to and including the words "wherefore he sues," and then adds thereto the following: "And plaintiff avers that the death of his said intestate was proximately caused by the willful, wanton, or intentional conduct of defendant's agent or servant who was acting within the line and scope of his employment at the time."

The assignments of error referred to in the dissenting opinion is as follows:

(13) The court erred in its oral charge to the jury in stating substantially as follows: "It makes no difference or it made no difference whether Mr. Massey actually owned the car or not."

(14) The court erred in its oral charge to the jury in stating to the jury, "I will include that."

(17) The court erred in giving to the jury in writing at the request of the plaintiff the following oral charge: "If you believe from the evidence that Richard W. Massey had control of the automobile, and the chauffeur was in his employ to operate it, this fact, if it be a fact, from the evidence, was sufficient to make out a prima facie case that the chauffeur was acting within the line and scope of his employment at the time, and, if you believe the facts to be true from the evidence, the court charges you that the burden of proof is upon the defendant to show by the evidence to your reasonable satisfaction that the servant was not at the time operating the machine in the discharge of his master's business."

Harsh, Harsh & Harsh and Stokely, Scrivner & Dominick, all of Birmingham, for appellant.

Complaint was subject to the demurrers interposed. 13 Ala. App. 354, 69 South. 383; 188 Ala. 603, 65 South. 986; 199 Ala. 177, 74 South. 248; 187 Ala. 584, 64 South. 153. Huddy on Automobiles (5th Ed.) §§ 630, 631, 653. The statement to the jury was improper. 73 Ala. 244; 108 Ala. 208, 19 South. 791; 203 Ala. 486, 84 South. 266; 203 Ala. 550, 84 South. 259; 175 Ala. 338, 57 South. 876, Ann. Cas. 1914C, 1037. The court erred in admitting evidence of good character. 40 Cyc. 2597–2601. Plaintiff alleged ownership of the car in the defendant, and the court erred in charging that ownership made no difference. 187 Ala. 590, 65 South. 928. If the chauffeur was on a private mission of his own, the defendant would not be liable. 12 Ala. App. 324, 66 South. 914; 201 Ala. 261, 77 South. 678; 193 Ala. 669, 69 South. 530; 182 Ala. 582, 62 South. 28; 179 Ala. 361, 60 South. 150, 43 L. R. A. (N. S.) 87; Berry on Automobiles, § 652; Huddy on Automobiles (5th Ed.) §§ 627, 628; 88 Conn. 27, 90 Atl. 33. The defendant was entitled to the general affirmative charge. 177 Ala. 71, 58 South.

438; 125 Ala. 254, 28 South. 438, 50 L. R. A. 620; 182 Mo. App. 304, 170 S. W. 403; 101 Kan. 745, 168 Pac. 862; 201 Ala. 138, 77 South. 562; 78 South. 849; 7 Ala. App. 593, 61 South. 37; 178 Mass. 378, 59 N. E. 1038, 86 Am. St. Rep. 490; 97 Minn. 305, 107 N. W. 133, 5 L. R. A. (N. S.) 598; 127 Iowa, 601, 103 N. W. 946.

George Bondurant, of Birmingham, for appellee.

The counts were sufficient. 177 Ala. 304, 58 South. 276; 17 Ala. App. 280, 84 South. 628; 187 Ala. 579, 65 South. 928; · Jackson v. Vaughan, 204 Ala. 543, 86 South. 469. The court will not review the record, in the absence of a bill of exceptions. 13 Ala. App. 468, 69 South. 382. The ownership by the defendant was not essential. 199 Ala. 177, 74 South. 248; 168 Ala. 612, 53 South. 76. There was no error in the statement of plaintiff's counsel. 183 Ala. 286, 61 South. 80, Ann. Cas. 1916A, 543. A witness may be supported, when impeached. 167 Ala. 107, 52 South. 732; 9 Port. 650; 90 Ala. 266, 8 South. 7, 9 L. R. A. 348; 161 Ala. 48, 50 South. 43. Counsel discuss the other assignments of error, but without further citation of authority.

MILLER, J. S. Pentecost, as administrator of the estate of Pauline Pentecost, brings this suit under the homicide statute against Richard W. Massey for wrongfully causing the death of plaintiff's intestate by running over her with an automobile in the public streets of Birmingham, Ala. It has been in this court twice. This is the third time. 201 Ala. 261, 77 South. 675; 202 Ala. 681, 81 South. 657.

There are two counts in the complaint. There were numerous demurrers to each. They were overruled by the court. Each count charges that defendant owned or operated an automobile; that his agent or servant, while acting within the line and scope of his employment, on the 19th day of December, 1913, ran the automobile over Pauline Pentecost in the streets of Birmingham, injuring her, from which she died. The first count charges that the defendant's agent or servant negligently ran said automobile over plaintiff's intestate. The second count alleges that it was done willfully, wantonly, or intentionally by defendant's agent or servant. Each count avers that at the time the agent or servant of the defendant was acting in the line and scope of his employment.

[1] It is true that each disjunctive averment in each count must state a cause of action. If not, the count is defective, and proper demurrer thereto should be sustained. No count is stronger than its weakest link. Each alternative averment in a count is a link, and it must state a cause of action.

[2] It is true that all willful or intentional homicides are not wrongful. A person may be killed willfully or intentionally, yet it may have been done in self-defense, and not wrongfully. The words "willful and intentional" do not carry with them, from necessity, that the act alleged was wrongfully done, unless the count contains other allegations which clearly show it was expressly or impliedly wrongful.

[3] The deceased was run over by an automobile in the streets of Birmingham, under the allegations of the count, wantonly, intentionally, or willfully by defendant or his agent or servant. The place where the injury occurred, the instrument—an automobile—with which it was done, aids the words "willful or intentional," and shows by implication, if not expressly, that it was not done in justification or in self-defense, but wrongfully.

The homicide statutes (sections 2485 and 2486, Code of 1907) give a right of action for "the wrongful act, or omission or negligence of any person," etc. The word "wrongful" in describing the act does not appear in either count of this complaint. Instead are used the words "negligent, willful, intentional, or wanton." The words fixed by law may at times be improved upon by parties; yet frequently, by not following its plain, simple words, counts are rendered defective. The alternative averments of these counts, aided by the other allegations of facts therein, each state a cause of action, and there was no error in overruling the demurrers assigned to them. Sections 2485 and 2486, Code, 1907; Union Cemetery Co. v. Jackson, 188 Ala. 603, 65 South. 986; Barefield v. Evans, 187 Ala. 579, 65 South. 928; Barbour v. Shebor, 177 Ala. 304, 58 South. 276; Kuykendall v. Edmondson, Adm'r, 205 Ala. 265, 87 South. 882.

There was judgment, on verdict of the jury, for plaintiff on the 16th day of October 1919. Within 30 days thereafter a motion for new trial was filed by the defendant and the parties agreed for it to be heard by the court on November 3, 1919. On the 18th day of November, 1919, the court overruled the motion, and the defendant duly excepted.

[4] On the 16th day of February, 1920, a bill of exceptions was presented to the trial judge. It was signed and approved by him on the 15th day of May, 1920. It was presented more than 90 days after the judgment was entered on the verdict of the jury, but within 90 days after judgment was entered on the motion for new trial. It purports to set out all the evidence. It can be looked to only as to matters contained in the motion for new trial; otherwise it was presented too late. Sections 3019 and 3020, Code of 1907; Shipp v. Shelton, 193 Ala. 658, 69 South. 102; section 2846, Code of 1907, as amended Acts 1915, p. 722.

The plaintiff introduced evidence showing that Pauline Pentecost—his child, about eight or nine years old—was killed by an automobile about dark on December 19, 1913,

while attempting to cross Twelfth avenue of the city of Birmingham. Plaintiff's evidence also tended to show that the automobile was running on said avenue at a rate of about 35 miles an hour when it struck the child; that it was defendant's car; that Herbert Young was driving it, and was the only person in the car at the time; the automobile was coming from the east and going west; and that Herbert Young was working for the defendant and had been in his employ for six or eight months running his car.

[5] This court in this case, reported in 201 Ala. 261, 77 South. 675, declared that the foregoing testimony made out a prima facie case for the plaintiff. When the plaintiff proves that the child was killed on the public streets of Birmingham, Ala., by an automobile, running at the rate of 35 miles an hour, and the testimony tends to show the car belonged to the defendant, that it was being run at the time by his chauffeur, Herbert Young, then the law presumes that Herbert Young was acting in the line and scope of his employment when he ran on and killed the child; and, unless this presumption is rebutted by the evidence of the defendant, the plaintiff would be entitled to recover. This court, in Dowdell v. Beasley, 205 Ala. 130, 87 South. 18, held that this presumption of law can be overcome by evidence, and, if the evidence is strong, clear, convincing, and undisputed, the defendant would be entitled to the general affirmative charge, when requested properly in writing.

Under these authorities the following written charge of plaintiff was properly given by the court:

"If you believe from the evidence that Richard W. Massey had control of the automobile, and the chauffeur was in his employ to operate it, this fact, if you believe it to be a fact from the evidence, was sufficient to make out a prima facie case that the chauffeur was acting within the scope of his employment at the time, and, if you believe the facts to be true from the evidence, the court charges you that the burden of proof is upon the defendant to show by the evidence to your reasonable satisfaction that the servant was not at the time operating the machine in the discharge of his master's business."

[6] The plaintiff's attorney in stating the case to the jury was allowed, over the objection and exception of defendant, to say:

"We expect to prove to you, gentlemen, that Herbert Young made a confession and said he ran over and killed the child."

The defendant objected because plaintiff "can't state that he expects to prove something that is not competent." Herbert Young was the chauffeur. He did not testify. It was competent for him to do so. The testimony of plaintiff showed he was driving the car that killed the child. The testimony of defendant's witnesses was to the contrary.

He could have admitted or denied it. If he testified and denied it, the plaintiff on proper predicate could, if true, prove a confession. This would have been competent evidence. In this the court did not err. McDaniel v. State, 166 Ala. 7, 52 South. 400; Cross v. State, 68 Ala. 476.

[7, 8] There was no error in the court sustaining plaintiff's objection to this question asked defendant:

"Do you know how many chauffeurs, different men, they had arrested for this same thing?"

One of the questions in the case was: Did Herbert Young run the car over the child? It was immaterial how many men had been arrested for it. The question was: Who did it? An arrest is in itself no evidence of guilt. The defendant on cross-examination was asked this question:

"Did you give him [Herbert Young] orders when you went to New York not to take the car?"

He answered:

"I did not give Herbert any instructions to be subservient to or obedient to the orders of Mrs. Spencer. In reference to the car it was not necessary at all. I knew at the time that he had the key to the car; he always had. I didn't give him any orders at all, because he knew he had no business to take it."

The court on motion of plaintiff properly excluded this part of the answer, "because he knew he had no business to take it." This was proper, as it was not responsive to the question. It stated a conclusion as to what the chauffeur knew. The witness should give the facts and let the jury draw the conclusions. The witness had testified as to the facts. Jones v. Hatchett, 14 Ala. 743; Cent. of Ga. v. Jones, 170 Ala. 611, 54 South. 509, 37 L. R. A. (N. S.) 588.

[9, 10] Chestnutt was a witness for plaintiff, his main witness. He had been under the employment of defendant at Terrace Court, but was not at the time of the trial. On cross-examination this question, over the objection of defendant, was asked him:

"Did you testify here on the former trial that you had never written Chestnutt or asked Chestnutt to come to your office to talk to you about this car?"

This was not improper on cross-examination. His answer was to the effect that he may have, but did not remember; if he did, Chestnutt never came. There was no motion to exclude the answer. The character or reputation of the witness A. B. Chestnutt, for the plaintiff, was put in issue as to truth and veracity. Several witnesses for the defendant testified they knew him, knew his character in the community where he lived, that it was bad, and that they would not believe him on oath. The witness must first testify that he knows the general char-

acter or reputation of the person in the community where he resides. We learn of and know the character and reputation of a person from what we see and know of him personally, from what we hear others speak of him, and frequently it is known because nothing has ever been heard against him. When a person lives in a community for years and nothing has been heard by his neighbors that reflects on his character, this is a strong circumstance on which a witness can base, not only knowledge of his reputation, but that it is good. The witness Schultz testified:

"I have known A. B. Chestnutt; have known him five or six years; knew his general reputation in the community in which he worked."

Plaintiff asked the witness this question:

"Now, during that time that you have known him for five or six years, I will ask you whether or not you have ever heard anything derogatory against his character or against his good name?"

This question was permitted by the court over defendant's objection and exception. Witness answered: "No; I have not." This question did not call for particulars. The answer gave no particulars. It called for and secured a fact on which witness could base his knowledge of Chestnutt's reputation and answer that in his opinion it was good, which he did. Childs v. State, 55 Ala. 28; Hadjo v. Gooden, 13 Ala. 719; Ward v. State, 28 Ala. 53; Lowman v. State, 161 Ala. 47, 50 South. 43.

[11] A. M. Throckmorton testified he knew the witness Chestnutt about five years; Chestnutt worked for him a year or year and a half; did not reside close to where he lives; and knew his general reputation at the place where he worked. The court did not err under the above authorities in allowing this witness to answer that Chestnutt's reputation was good, and that he would believe him on oath in a court of justice.

[12, 13] The defendant excepted to the following part of the oral charge of the court:

"It made no difference or makes no difference whether Mr. Massey actually owned the car or not, but it is a question of issue of fact whether or not he was responsible for its operation and control by the chauffeur on that occasion."

The complaint charged in the alternative that defendant owned or was operating an automobile. This being in the disjunctive, it was incumbent on plaintiff to prove one or the other alternative to the reasonable satisfaction of the jury. It was immaterial whether he owned the automobile under the allegations of the complaint, if the proof showed he was operating the automobile by a chauffeur at the time of the injury; and it is clear from this and other parts of the oral

charge that the court so impressed the jury. The court also in its oral charge and written charges given at the request of defendant impressed the jury that there could be no recovery by plaintiff if the chauffeur was not acting in the line and scope of his employment by the defendant at the time of the accident.

The court also charged the jury orally, to which defendant excepted, as follows:

"It involves this question for your consideration, whether or not the chauffeur while on the mission, if mission he was on, in having the car under his control and operating it on Twelfth avenue when this occurrence took place, whether he was in or about his employment. Was he on any duty for Massey, was he performing any mission for Mr. Massey, specially given or generally given, is a question for you to determine under the evidence. Was he in the line and scope of his employment, his relationship to his employer on that occasion that this—I speak of it as an accident—I don't mean to imply that it was an accident, but occurrence, I will call it, resulting in the death of this little child."

Plaintiff's counsel said to the court:

"You use the word 'Massey.' You mean on a mission of Mr. Massey's or any member of his family?"

The court stated in the presence of the jury, "I will include that," and then the court immediately said to the jury:

"In other words, I will make that whether or not he was on any mission under his employment, if he was on any mission which he was authorized to discharge under his employment by the Masseys, including the defendant."

The oral charge of the court and the written charges given by the court at the request of the defendant clearly informed and instructed the jury that there could be no recovery by the plaintiff unless the child was killed by the chauffeur while operating the car for defendant, and while acting in the line and scope of his employment by the defendant. This oral charge and these written charges make this law clear and plain when taken together, and cure any error, if any, in that part of the oral charge singled out and excepted to by the defendant.

Herbert Young was not examined on this trial. He was not at court. He had been examined at a former trial of this case. His testimony was in writing. Each party seemed to be willing, and so stated in open court, that the other could use that testimony, but neither party introduced it.

Under plaintiff's evidence the child was killed in front of Terrace Court, owned by defendant, by an automobile of the defendant, with no one in it except Herbert Young, the chauffeur of defendant, about dark, and the car was running at the time at the rate of 35 miles or more an hour.

The evidence of defendant shows that de-

fendant's wife's car, with his daughters in it, was driven by Herbert Young, the chauffeur, to defendant's home about dark, not by Terrace Court, and that neither Herbert Young nor the car left defendant's home until they had heard of the child's death; and, if Herbert Young left there with the automobile after bringing his daughters home, he did so without any knowledge of the family, on his own business, and on no business of the defendant.

This case has been here twice before. Twice the court below gave the general affirmative charge for the defendant. Each time the case was reversed by this court without deciding whether that charge was properly given. It was not necessary in either for it to be decided. This time the court below refused to give each of the following charges, requested in writing by the defendant:

(1) "If the jury believe the evidence, they must find for the defendant."

(2) "Under the undisputed evidence, if the jury believe it, the jury cannot find for the plaintiff in this cause."

As the general affirmative charge had been given twice and refused once by the trial court, the writer decided this evidence should be read to this court. It was read to the court.

[14] The court is of the opinion that there is testimony from which the jury could decide that the child was killed as the car was returning home with the defendant's daughters. It was about dark; the car was a limousine; it was running about 35 miles an hour; and the witnesses saw only Herbert Young, the chauffeur, in it. Under these circumstances the daughters could have been in it, and not seen; and the child could have been killed and the car passed Terrace Court without the defendant's daughters knowing it. There is evidence showing that Herbert Young was chauffeur of the defendant at the time; that he was driving defendant's car when the child was killed. From this the law presumes he was acting in the line and scope of his employment when the child was killed. The court is of the opinion that this presumption of law is not overcome by the defendant with clear and convincing proof; that there are some inferences that may be drawn from the evidence indicating that Herbert Young at the time the child was killed was acting in the line and scope of his employment; and that the court did not err, therefore, in refusing to give the foregoing written charges. Tobler v. Pioneer Min. & Mfg. Co., 166 Ala. 482, 52 South. 86; Shipp v. Shelton, 193 Ala. 658, 69 South. 102.

Finding no reversible error in the record, this case is affirmed.

SAYRE, SOMERVILLE, GARDNER, and THOMAS, JJ., concur.

ANDERSON, C. J., and McCLELLAN, J., dissent.

Justice McCLELLAN entertains the opinion that assignments of error 13, 14, and 17 are well taken, and reversal should be thereupon predicated; that the declaration of "prima facie presumption," stated in the first paragraph of the opinion in Dowdell v. Beasley, 87 South. 18,[1] is unsound and should not be recognized as authority, the facts hypothesized only affording bases for an "inference," not a "presumption" (see Mathews v. A. G. S. Ry. Co., 200 Ala. 253, 76 South. 17, distinguishing "inference" from "presumption")—a distinction expressly taken in this case on former appeal (201 Ala. 264, 77 South. 675), in limiting this court's approval of the there quoted statement from Long v. Nute, 123 Mo. App. 204, 100 S. W. 511—a distinction that must now be wholly ignored to arrive at an affirmance of this judgment, particularly with respect to the unsound definition of "burden of proof" stated in charge 2 (assignment 17) given at plaintiff's instance. It is so elementary as heretofore to have required no remark that there is the widest difference between making out a prima facie case for submission to the jury and making out a case entitling a plaintiff to the affirmative charge.