39 So.2d 578

### ROGERS v. HUGHES.
I Div. 315.

Supreme Court of Alabama.
March 24, 1949.

Johnston, McCall & Johnston, of Mobile, for appellee.

Outlaw, Seale & Kilborn, of Mobile, for appellant.

LIVINGSTON, Justice.

The sole question presented here is the propriety of the trial court's refusal of the general affirmative charge to the defendant.

The action is for personal injuries sustained by Lena Hughes, on or about July 1, 1946, when she was struck by a truck belonging to the defendant, Sam O. Rogers, and was severely and permanently injured. The cause was tried on one count charging simple negligence, and resulted in a verdict and judgment for the plaintiff in the sum of $2,750.

The case turns on the question of whether or not the parties operating the truck at the time the injuries occurred were agents of the defendant, and acting within the line and scope of their employment.

The following facts are undisputed. The plaintiff was severely injured by the truck of defendant on or about July 1, 1946, at or near the intersection of Wilson Avenue and West Turner Road, public streets in the city of Prichard, Mobile County, Alabama. Defendant owns and operates on the same property, in the city of Mobile, a small lumber yard and trailer court. In the afternoon of the day plaintiff was injured, defendant's truck loaded with six or seven hundred feet of lumber was proceeding from the lumber yard to some place in Whistler, Alabama, and was in charge of a Negro driver (named George, but otherwise unidentified). The loaded truck broke down on a public highway or street, some two miles distant from the lumber yard. The driver left the truck and went back to the lumber yard, and reported the break down to Clarence Igo about sun down. The driver then carried Mr. Igo out to the disabled truck in the driver's car and, after inspecting the truck, returned him to the lumber yard and went home. Igo and his wife were renting from the defendant, occupying one of the trailers in the trailer court. The defendant, who had been in ill health for some six or eight months occupied another trailer. Mrs. Igo sold the lumber being delivered that afternoon, carried the money to defendant who put it in his purse, and placed it under his pillow. Emory Rogers, a grandson of the defendant, came to visit his grandfather the day before the accident. After the driver of the truck reported the break down to Mr. Igo, Mr. Igo and Emory Rogers secured Louis Dubose to tow the disabled lumber truck to the lumber yard, and also secured Levi Law to ride in and guide the disabled truck. Mr. Igo and Emory Rogers drove the defendant's car out to the disabled truck, followed by Dubose and Law. A tow chain about fifteen feet long was attached to the front of the disabled truck and to the rear end of the truck driven by Dubose. With Law guiding the disabled truck Dubose proceeded to tow it to the lumber yard. Igo and Emory Rogers followed in the defendant's car. Plaintiff was waiting for a bus at a bus stop at the intersection of Wilson Avenue and West Turner Road. Wilson Avenue runs north and south, and West Turner Road runs east and west. Plaintiff was standing on the west side of Wilson Avenue, and the north side of West Turner Road. As the Dubose tow truck, then proceeding in an easterly direction, came up to the intersection it either stopped or slowed down on account of the traffic. The brakes on the disabled truck were not sufficient to stop it, and Law cut to his left to avoid running into the back end of the tow truck, and ran into or against plaintiff. The accident occurred about 9 o'clock at night.

■ Our decisions are clear to the effect that proof of ownership of an automotive truck causing injury raises an administrative presumption that the person in possession and control of the truck is the agent or servant of the owner, and is acting within the line and scope of his employment. Dowdell et al. v. Beasley, 205 Ala. 130, 87 So. 18; Aetna Explosives Co. v. Schaeffer, 209 Ala. 77, 95 So. 351; Massey v. Pentecost, 206 Ala. 411, 90 So. 866; Ford v. Hankins, 209 Ala. 202, 96 So. 349; Freeman v. Southern Life & Health Ins. Co., 210 Ala. 459, 98 So. 461; Tullis v. Blue, 216 Ala. 577, 114 So. 185; Toranto v. Hattaway, 219 Ala. 520, 122 So. 816; Cruse-Crawford Mfg. Co. v. Rucker, 220 Ala. 101, 123 So. 897; Jefferson County Burial Society v. Cotton, 222 Ala. 578, 133 So. 256; Mobile Pure Milk Co. v. Coleman, 230 Ala. 432, 161 So. 829; Grimes v. Fulmer, 235 Ala. 645, 180 So. 321; Craft v.

Koonce, 237 Ala. 552, 187 So. 730; Chandler v. Owens et al., 235 Ala. 356, 179 So. 256; Slaughter v. Murphy, 239 Ala. 260, 194 So. 649.

■■ We can add nothing to what was said in our recent case of Cox v. Roberts, 248 Ala. 372, 27 So.2d 617, 619, concerning the nature or character of this presumption, and are content to quote from that case:

"As to the nature or character of this presumption, it is said in Tullis v. Blue, supra (216 Ala. 577, 114 So. [185], 187): 'It is well settled that those presumptions do arise from proof of the defendant's ownership of the vehicle; but it is well settled also that they are prima facie presumptions merely, or, as they are sometimes called, administrative presumptions, based upon considerations of fairness and convenience in placing the burden of proof. They are not in themselves evidence, and in practice their effect is merely to impose upon the defendant the burden of showing that the driver was not his agent, or that, if he was, he was not acting within the scope of his authority or in the course of his employment.'

"In Cruse-Crawford Mfg. Co. v. Rucker, supra, it was held that this presumption 'is not an inference of fact, and that it has no intrinsic value as an inference, but that it serves in the place of evidence only until evidence to the contrary is adduced when it becomes functus officio.' And in Craft v. Koonce, supra (237 Ala. 552, 187 So. [730], 731), in dealing with the character of this presumption, it was said as follows: 'This is a procedural expedient and takes the place of evidence respecting matter peculiarly known to defendants, but necessary to sustain plaintiff's cause of action, and is distinguishable from an inference of fact properly deducible from what is proven. When plaintiff proves such ownership of the car by defendant, and thereby brings into being the presumption to which we have referred, he need not offer further proof that the operator of the car was the agent of defendant, and in the line and scope of his authority, until and unless defendant has offered proof that he was not acting for defendant in the line and scope of his authority.'

"This presumption is, of course, rebuttable and if the evidence is strong, clear and undisputed to the effect that the operator of the car at the time of the collision was not acting as the agent of the owner or was not within the line and scope of his authority, the owner defendant would be entitled to the general affirmative charge with hypothesis when requested in writing. Dowdell v. Beasley, supra; Tullis v. Blue, supra; Toranto v. Hattaway, supra; Cruse-Crawford Mfg. Co. v. Rucker, supra; Mobile Pure Milk Co. v. Coleman, supra; Craft v. Koonce, supra.

"But where the rebutting proof of the owner defendant is weighted by circumstances tending to bring it into suspicion and doubt or is of such a character as to support a reasonable inference that the car was being operated in the owner's business or for his pleasure or benefit, the general affirmative charge with hypothesis should not be given at the request of the defendant. Massey v. Pentecost, supra; Ford v. Hankins, supra; Grimes v. Fulmer, supra; Chandler v. Owens et al., supra."

■ Sam O. Rogers, the defendant, testified in his own behalf. He testified that he did not know that the lumber truck had become disabled, nor that plaintiff had been injured until early the next morning when Emory Rogers, his grandson, told him. He further testified that neither Mr. Igo nor Emory Rogers had ever been employed by him at any time. The testimony of Mr. Igo and Emory Rogers is to the same effect. Rogers further testified:

"Q. How long had you been sick prior to the accident? A. In the bed eight months.

"Q. Whose lumber was it (meaning the lumber on the truck when it broke down)? A. I don't know, a man in Whistler.

"Q. Did you sell it to him? A. No. Mrs. Igo sold it to him and brought the money in. She didn't know who, she had some money for lumber, and handed it to me on the bed, and I put it in my purse and stuck it under my head. I didn't know a thing about it. Mrs. Igo didn't know who.

"Q. While you were sick, who took orders and sent them out on your truck lumber(sic)? A. Well, first one and then another. They would come to me sometimes and I would make the order out laying down, sometimes sitting up, and sometimes get up and go out myself and check, when I wasn't able to stand up.

"Q. Who had charge of the truck? A. The truck, at that particular time, I understood, George, the negro, did, but I don't know, because I didn't see him at all.

"Q. Who did give them the right to drive the truck when they didn't bother you? A. Well, Mrs. Igo mostly, that was the woman that was good to me, most anybody would come in, Mrs. Durham and Mrs. Bogan would come in to see me, and the trailer people would help me all they could, every way they could, just nice as you ever saw."

Clarence Igo testified:

"Q. Did he (defendant Rogers) have any other employees there? A. Well, my wife was checking lumber and looking after the trailer court for him.

"Q. Your wife had something to do with running the business there, didn't she? A. Yes.

"Q. Was your wife employed by Rogers? A. Yes, sir.

"Q. In what capacity was she employed? A. Well, she sold and checked the lumber there and looked out for the trailer court.

"Q. She practically ran the business, didn't she? A. Well, I wouldn't say that: she done quite a bit of it all right.

"Q. She ran it when Mr. Rogers was sick, didn't she? A. That's right."

Mr. Igo testified further with respect to Mrs. Igo:

"Q. Where was she? A. She was there at the trailer.

"Q. She knew it was broke down out there? A. Yes, she knew it was broke down.

"Q. You say she didn't know you were going out to pull it in? A. No, sir.

"Q. Did she know where you were going? A. No. She knew we were going

out to see it, but she didn't know we were going to pull it in."

Emory Rogers testified:

"Q. For whom were you bringing the truck into town, to the lumber yard, rather? A. I was bringing it in the interest of my grandfather.

"Q. In the interest of your grandfather, * * * as a matter of fact, you were bringing it in for your grandfather, weren't you? A. Yes, I was bringing it in for my grandfather."

Louis Dubose testified:

"Q. Did they say who (they) wanted the truck towed in for? A. Yes, sir, they said they wanted it towed in for Mr. Rogers.

"Q. What was done, if anything by Mr. Igo as to directing Levi Law in the operation of the truck? A. Well. I asked Mr. Igo whether he had any brakes on it when we were tying the chain on, and he opened the door and turned the lights on, and got in and pumped the brakes with his hand. He said, 'they are not as good as they should be, but they will stop,' but he was a mechanic, he said, that he was looking after it, and he told me that if Mr. Rogers didn't give me anything for helping them to get it in, he would give me something, and I told him" * * *.

Dubose and Law were put in jail after the accident, and Mr. Rogers, the defendant, visited them the next morning. Dubose further testified:

"Q. Did Mr. Rogers offer to get you a lawyer? A. Yes, sir, he did.

"Q. What was said about that? A. He told me, he says, 'you boys have to have a lawyer. You ought to hire Mr. Seale, that is my lawyer,' and I told him, and he said 'don't tell the court anything about my truck not having any brakes on it, because it would ruin me.'"

It will be conceded that Mr. Rogers (the defendant), Mr. Igo, and Emory Rogers all testified that the defendant knew nothing about his truck being disabled on the public highway or street, and that he knew nothing of the efforts to tow it in; but that evidence is so weighted by other evidence and circumstances tending

to bring it into suspicion and doubt, that we feel constrained to say that it was not clear and convincing, and does not meet that measure of proof entitling defendant to the general affirmative charge.

Affirmed.

BROWN, FOSTER and LAWSON, JJ., concur.