THOMAS, Judge.
Dexter Brown and Kira Dodds appeal a judgment as a matter of law ("JML") entered by the Jefferson Circuit Court ("the trial court") in favor of K & M Tree Services, Inc. ("K & M"). We reverse the trial court's judgment and remand the cause for further proceedings.
Background
On February 23, 2016, Brown and Dodds filed a complaint in the trial court against K & M, Michael Phillips, Access Insurance Company, and fictitiously named defendants. In relevant part, Brown and Dodds alleged that, while driving a vehicle owned by K & M, Phillips had negligently and wantonly struck their vehicle, thereby causing them serious injury, and that K & M was consequently liable based on the theories of respondeat superior and negligent entrustment. On March 28, 2016, K & M answered the complaint, generally denying the allegations and asserting various defenses.
On July 13, 2016, Brown and Dodds moved for a default judgment against Phillips. The trial court entered an order granting the motion on August 10, 2016, and indicated in its order that damages would be determined at a later date. Upon a motion of Brown and Dodds, the trial court dismissed Access Insurance Company from the action on July 22, 2016. The trial court conducted a jury trial on May 2, 2017, at which Phillips did not appear. The relevant evidence presented to the jury at trial revealed the following.
The vehicle accident in question occurred on August 7, 2014, at around 9:00 p.m. It is undisputed that, at that time, Phillips was employed by K & M and was driving a truck owned by K & M when it struck from behind the vehicle transporting Brown and Dodds. The collision caused damage to both vehicles but did not render either inoperable. The events following the accident are disputed.
According to Dodds, she, Brown, and Phillips exited the vehicles to verify that no one had been seriously injured. She testified that Brown and Phillips had a conversation, during which Phillips reportedly said that he had been "on his way to get his boss." She stated that Phillips then began telling Brown "his life story," specifically informing Brown, she said, that he had struggled with "a drug problem ... and that he was just going to be in trouble." At some point, Dodds said, Phillips also made a telephone call and told her afterward that he had been speaking with his wife during the call. Dodds said that the police arrived approximately 10 to 15 minutes after the accident occurred and completed a report.
Dodds testified that, approximately 15 to 20 minutes after the police had arrived at the scene, the owner of K & M, Kenneth Malone, also arrived, while the police were still present. According to Dodds, after exiting his vehicle, Malone reportedly addressed Phillips and stated: "You need to learn how to F'ing drive." She testified that Malone later asked if she had been injured and that Malone and "another *356 guy" inspected the damage to her vehicle and to the vehicle owned by K & M.
Dodds stated that the police waited for Malone to arrive and then left the scene of the accident. After the police left, Dodds said, Phillips and Malone got into the vehicle owned by K & M and Malone began to drive the vehicle away from the scene of the accident. She said that Malone appeared to be upset with Phillips. Dodds testified that, as he was leaving, Malone stopped the vehicle and Phillips got out of the vehicle and began walking toward a fuel station. Brown and Dodds then left the scene of the accident and went to an emergency room.
Brown also testified and corroborated much of the testimony elicited from Dodds. Brown agreed that Phillips had told him "his life story," explaining, Brown said, that he "had been on drugs before" but was presently "clean." Brown also agreed that the police were still present when Malone arrived. He agreed that Malone appeared to be mad at Phillips upon his arrival and that he had observed Malone and Phillips speaking with the police.
Brown also described Malone's departure from the scene in a similar fashion as Dodds, although he admitted to testifying during his deposition that Phillips had left the scene "with the other guy," as opposed to Malone. Brown clarified: "[Phillips] got in the truck with one of them, and they pulled off, and they dropped him off at the end of the street. It was both of them there. He got in the truck with one of them, so." He agreed, however, that Phillips had exited the vehicle owned by K & M as the vehicle was leaving the scene of the accident and that the driver had left Phillips on foot near a fuel station. Brown did not testify about the comment that Dodds said she had heard Phillips make regarding the reason he had been driving K & M's vehicle, i.e., that he had been "on his way to get his boss."
Malone also testified, and his testimony differed from that of Brown and Dodds in several respects. Malone explained that K & M provided tree-removal services and that he had owned the company for 16 years at the time of trial. At the time of the accident, Malone testified, K & M employed five workers and owned five trucks. He described the daily activities of K & M's employees, explaining that they would all meet each morning at a storage facility, prepare for their daily projects, travel to and perform projects, and then return the trucks, equipment, and keys needed to operate the trucks and equipment to the storage facility at the end of each workday.
Malone stated that, with the exception of Phillips, all of K & M's employees had driven trucks owned by K & M to travel to and from projects. Phillips, he said, had been working as a tree cutter for K & M for about eight months at the time of the accident and did not possess a valid driver's license because his had been suspended. For that reason, Malone said, Phillips had not been permitted to operate any of K & M's trucks and had been dropped off and picked up from work each day by his wife. Malone said that he had been aware that Phillips had struggled with drug use in the past but that Phillips had passed a drug screen before being employed.
According to Malone, Phillips and the other workers had finished the workday around 6:00 p.m. on the night of the accident. Malone said that he received a telephone call sometime between 6:00 p.m. and 8:00 p.m. from his brother-in-law, Brad, who was also Phillips's supervisor. Malone said that Brad explained to Malone that Phillips was waiting for his wife to pick him up at the storage facility because she was running late. Malone testified that he agreed to let Phillips stay inside the storage *357 facility until his wife arrived, but he denied giving Phillips permission to use one of K & M's trucks for any reason. Malone said that he went to bed early that evening, sometime before 9:00 p.m., because he was planning to go fishing the next day.
Malone testified that he awoke around 9:00 p.m. that night to a telephone call from Phillips, who explained that he had wrecked one of K & M's trucks. According to Malone, Phillips said that his wife's vehicle had broken down and that he had taken one of K & M's trucks to go pick her up when he struck the vehicle transporting Brown and Dodds. Malone said that, upon hearing this news, he was mad and aggravated and that he fired Phillips during the telephone call and told him not to be present at the scene of the accident when Malone arrived. Phillips then handed his cellular telephone to a police officer, Malone testified, and Malone asked the police officer not to have K & M's truck towed. Malone testified that he either told the police officer that Phillips had stolen the truck or, at least, that he had taken it without permission.
Malone said that he then called Brad, and they traveled to the scene of the accident together. According to Malone, it took them approximately 45 minutes to get there, and both the police and Phillips had already left by the time they arrived. He said that Brown and Dodds were still present when they arrived, however. Malone said that he checked to make sure that Brown and Dodds had not been seriously injured and then left the scene of the accident with K & M's truck. About a month later, Malone said, he filed a police report explaining that Phillips had used K & M's truck for personal reasons without authorization on the night of the accident.
Malone denied that Phillips was using K & M's truck to meet him on the night of the accident, explaining that he had personally owned seven vehicles, including "a new truck at the time," and would not have had "any reason for anybody to pick [him] up." He also said that, except in emergencies, K & M did not operate at night because using chainsaws at night is dangerous. Malone further testified that, in August 2014, Phillips and his wife lived in Trussville and that the accident occurred on the route between K & M's storage facility and Phillips's residence, which, Malone said, was not the route to his own residence.
Brian Nalley also testified. Nalley said that, in August 2014, he was a police officer working for the Birmingham Police Department. In 2015, Nalley retired from the Birmingham Police Department and began working for the Tarrant Police Department. From 1998 until 2015, Nalley said, he had worked exclusively on vehicle accidents, specifically 6 to 12 accidents per 8-hour shift. Nalley testified that he remembered responding to the accident in question on August 7, 2014, at approximately 9:00 p.m. Nalley also remembered speaking on a cellular telephone with an individual who had identified himself as the owner of K & M and the truck being driven by Phillips, which Nalley described as "a company vehicle." Nalley said: "If I'm not mistaken, [Phillips] said that his truck had broke down[,] and he had to leave it at the shop, and he took the company vehicle home." He also testified that, as far as knew at the time, Phillips had borrowed the truck with the permission of its owner.
Nalley testified that the person with whom he had spoken on Phillips's cellular telephone regarding ownership of the truck did not tell him that Phillips had stolen the vehicle or had taken it without permission. When asked at trial how he *358 was sure of that recollection, Nalley responded:
"Because if he had told me [that Phillips] had stolen the truck or had it without permission, I would have detained [Phillips] by state law, and I would have had to detain him until the owner got there. Then when the owner got there, he would have filed a report of a stolen[,] recovered vehicle. And then I would have had to call a detective to charge the individual with receiving stolen property."
Nalley said that he did not take any of the actions described above on the night of the accident. He further indicated that his failure to make such a report when required to do so would have resulted in the termination of his employment with the Birmingham Police Department. Nalley also testified that he would have at least made a notation of such information in the narrative portion of his accident report, which, he said, he did not do.
Nalley reviewed his accident report at trial and testified that, according to the report, Phillips's driver's license had been "revoked" at the time of the accident. Nalley also said that he was still present at the scene of the accident when Malone arrived; he said: "I can't leave the vehicles until somebody gets there ...." As far as he remembered, Nalley said, Phillips was also present when Malone arrived. Nalley testified that Malone did not report K & M's truck as having been stolen when he arrived at the scene of the accident and that he did not recall speaking with Malone at that time.
During cross-examination by K & M's attorney, Nalley admitted that he had investigated hundreds, if not more than one thousand, accidents since the accident in question and that he had needed to review his accident report at trial to remember "[s]ome of the finer details." He also said that he was not aware that Malone had filed a report regarding K & M's truck being used without proper authorization after the accident and stated that he would not have been made aware that such a report had been filed. He said: "Only time they contact me after I work a wreck is if somebody died within 30 days of the accident."
Although Phillips did not possess a valid driver's license at the time of the accident, Nalley testified that he did not issue Phillips a citation because he had not actually seen Phillips operating K & M's truck and because the decision to issue a citation would have been within his discretion. He said that, when vehicle accidents occur, he sometimes does not issue citations because doing so would be "adding insult to injury." During redirect examination, however, Nalley testified that he would not have had discretion to forgo documenting the unauthorized use of K & M's truck had he been aware of such circumstances.
The day after Brown and Dodds concluded their case-in-chief, K & M orally moved for a JML in chambers regarding all the claims asserted against it by Brown and Dodds, arguing in relevant part that Brown and Dodds had failed to present any evidence indicating that "Phillips was acting in the line and scope of his employment when the accident occurred," as is required, K & M said, to establish liability based on the doctrine of respondeat superior. K & M's attorney argued that Dodds's testimony that she heard Phillips tell Brown that he had been "on his way to get his boss" when the accident happened constituted "an alleged hearsay statement .... We don't even know who he was really referring to as his boss." K & M's attorney contrasted that evidence with the unequivocal testimony of Malone, who had emphatically denied that Phillips had been traveling to meet him.
*359 In response to K & M's argument regarding respondeat superior and its argument regarding negligent entrustment, counsel for Brown and Dodds noted that Nalley had
"testified that he was under the impression that ... Phillips had permission to drive the vehicle. My clients have testified to that. The only testimony not to that effect is from [Malone] himself, and his credibility has been called into question in this case. And one of the jury instructions that I hope that Your Honor gives will be that if you testify falsely about any material fact, the jury can disregard any or all of your testimony. The things about hearsay, those were statements by party opponents. Those weren't hearsay, and even if they were, they're in evidence. So at this point, it's irrelevant.... The plaintiffs testified that ... Phillips told them at the scene, [']I was on my way to pick up the boss.['] The boss obviously was ... Malone. There's plenty of evidence that the jury can conclude that. They're allowed to make reasonable inferences in this case."
After the trial court determined that it should grant K & M's motion for a JML regarding the negligent-entrustment claim, the following exchange occurred between counsel for Brown and Dodds and the trial-court judge regarding whether a JML on the theory of respondeat superior was also appropriate:
"[Brown and Dodds's attorney]: On the respondeat superior as well. Your Honor?
"[The trial court]: On everything. If negligent entrustment goes, respondeat superior goes.
"[Brown and Dodds's attorney]: Those claims can-
"[The trial court]: The guy's not acting in the line and scope of his employment. It's 9:00 at night.
"[Brown and Dodds's attorney]: There was testimony he was going to pick up his boss in a work truck.
"[The trial court]: No, no, no. What's the testimony he's going to pick up his boss?
"[Brown and Dodds's attorney]: The plaintiffs testified that-
"[The trial court]: That's what they overheard him say. One of the plaintiffs said, I have no idea who he is talking to on the telephone. Matter of fact, didn't somebody say the guy walked away? One of the plaintiffs said he was walking away while talking to them.
"[Brown and Dodds's attorney]: Your Honor, that's in testimony that [Phillips] was going to pick up his boss. That's in evidence, Your Honor. I mean, he's driving a work truck to pick up his boss.
"[The trial court]: No. The evidence is clear he took the work truck to go pick up his wife, not to go pick up his boss.
"[Brown and Dodds's attorney]: That's one side of the story, Your Honor, sure, but that-
"[The trial court]: Understood, but I'm not going to argue with you about that. I understand your argument, but respondeat superior goes too. All claims against K & M are gone."
On May 4, 2017, the trial court entered an order against Phillips awarding $100,000 each to Brown and Dodds. That same day, the trial court entered a written judgment granting K & M's motion for a JML. Brown and Dodds later filed a timely postjudgment motion, which the trial court denied that same day. Brown and Dodds filed a timely notice of appeal to our supreme court. On August 15, 2017, the supreme court transferred the appeal to this court pursuant to *360 § 12-2-7(6), Ala. Code 1975. On appeal, Brown and Dodds argue that the trial court erred by granting K & M's motion for a JML because, they say, sufficient evidence was presented to warrant submitting the question of K & M's liability based on the theory of respondeat superior to the jury.
Standard of Review
" 'The standard of review applicable to a ruling on a motion for [a JML] is identical to the standard used by the trial court in granting or denying [that] motion. Thus, in reviewing the trial court's ruling on the motion, we review the evidence in a light most favorable to the nonmovant, and we determine whether the party with the burden of proof has produced sufficient evidence to require a jury determination.
" '....
" '... In ruling on a motion for a [JML], the trial court is called upon to determine whether the evidence was sufficient to submit a question of fact to the jury; for the court to determine that it was, there must have been "substantial evidence" before the jury to create a question of fact. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." '
" American Nat'l Fire Ins. Co. v. Hughes, 624 So.2d 1362, 1366-67 (Ala. 1993). (Citations omitted.) See Ex parte Grand Manor, Inc., 778 So.2d 173 (Ala. 2000). On questions of law, this Court indulges no presumption of correctness of the trial court's ruling. State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 303 (Ala. 1999)."
Congress Life Ins. Co. v. Barstow, 799 So.2d 931, 936 (Ala. 2001).
Analysis
As already mentioned, Brown and Dodds address the trial court's JML on appeal only as it relates to the theory of respondeat superior.
"In order for a plaintiff to recover against a defendant under the doctrine of respondeat superior, the plaintiff must establish two facts: (1) that the status of employer and employee existed at the time of the negligent or wanton act and (2) that the act was done in the scope of the employee's employment."
Newsome v. Mead Corp., 674 So.2d 581, 583 (Ala. 1995).
Brown and Dodds's argument is founded on our supreme court's decision in Durbin v. B.W. Capps & Son, Inc., 522 So.2d 766, 766-67 (Ala. 1988), in which it explained the following regarding corporate liability for vehicular accidents in an action based on the theory of respondeat superior:
"The corporate defendant owned the [vehicle]. The individual defendant was operating it at the time of the accident. This creates an 'administrative presumption' of agency, but this 'administrative presumption' is not in itself evidence. Rogers v. Hughes, 252 Ala. 72, 75, 39 So.2d 578, 579 (1949) ; Tullis v. Blue, 216 Ala. 577, 114 So. 185 (1927). In Tullis v. Blue, Justice Somerville wrote for a division of the Court:
" 'It is well settled that those presumptions do arise from proof of the defendant's ownership of the vehicle; but it is well settled also that they are prima facie presumptions merely, or, as they are sometimes called, administrative presumptions, based upon considerations of fairness and convenience in placing the burden of proof. They are not in themselves evidence, and in practice their effect is merely to impose upon the defendant the burden *361 of showing that the driver was not his agent, or that, if he was, he was not acting within the scope of his authority or in the course of his employment. If the evidence thereon is in conflict, or leads to doubtful inference only, the issue should go to the jury. If, however, the evidence, without dispute, rebuts the facts thus presumed, there is no issue for the jury, and the general affirmative charge should be given for the defendant on request. Dowdell v. Beasley, 205 Ala. 130, 87 So. 18 [ (1920) ] ; s.c., 207 Ala. 709, 91 So. 921 [ (1922) ] ; Massey v. Pentecost, 206 Ala. 411, 90 So. [866] 868 [ (1921) ] ; Aetna Explosives Co. v. Schaeffer, 209 Ala. 77, 95 So. 351 [ (1923) ] ; Ford v. Hankins, 209 Ala. 202, 96 So. 349 [ (1923) ] ; Rooks v. Swift & Co., 210 Ala. 364, 98 So. 16 [ (1923) ] ; Freeman v. Southern, etc., Ins. Co., 210 Ala. 459, 98 So. 461 [ (1923) ].' (Emphasis supplied.)
" 216 Ala. at 578, 114 So. at 187.
"In Craft v. Koonce, 237 Ala. 552, 554, 187 So. 730, 731 (1939), the Court wrote:
" 'When plaintiff proves such ownership of the [vehicle] by defendant, and thereby brings into being the presumption [that the driver was his agent], he need not offer further proof that the operator of the [vehicle] was the agent of defendant, and [was acting] in the line and scope of his authority, until and unless defendant has offered proof that he was not acting for defendant in the line and scope of his authority. And if defendant makes that proof and it is not contradicted, either expressly or inferentially, defendant is entitled to the affirmative charge. But if there is any evidence which reflects upon the credibility of that evidence by defendant on that question, or from which an inference may be drawn to a different result, whether such evidence was produced by defendant or plaintiff, the question of whether the operator of the [vehicle] was defendant's agent acting in the line and scope of his authority should be submitted to the jury.' "
(Final emphasis added.) Brown and Dodds also cite Pryor v. Brown & Root USA, Inc., 674 So.2d 45, 50 (Ala. 1995), in which our supreme court quoted from Williams v. Hughes Moving & Storage Co., 578 So.2d 1281, 1285 (Ala. 1991), in stating: " 'In order for [the employer] to rebut the presumption and prevent submission of [the plaintiff's] claims to a jury, its evidence must eliminate any question as to whether [the employee] was acting in the scope of his employment by having this truck ... when the accident occurred.' " (Emphasis added.)
In their appellate brief, Brown and Dodds apply the foregoing principles to the evidence they presented at trial and contend the following:
"Here, it is undisputed [that] Phillips was driving a vehicle owned by [K & M]. Additionally, [Brown and Dodds] presented evidence that Phillips was en route to pick up his boss, the owner of [K & M]. Furthermore, the only testimony that Phillips was not within the line and scope of his employment was that of Malone, who stated that he told ... Nalley that Phillips stole [K & M]'s vehicle. However, that testimony, along with every other material fact about which Malone testified, was directly contradicted by the testimony of ... Nalley. Prior to being granted [a JML], [K & M] had the obligation to present uncontradicted evidence showing that[,] at the time of the wreck[,] its employee was not within the line and scope of his employment.... [K & M] failed to do so, and, *362 accordingly, its motion for [a JML] was due to be denied."
In response, K & M argues that it "presented ample and substantial evidence to rebut the administrative presumption that Phillips was within the scope of his employment and was in the accomplishment of a work-related objective at the time of this accident," and it points to Malone's testimony in support of its argument. Regarding the testimony elicited from Dodds indicating that Phillips told Brown that he had been "on his way to get his boss" when the accident occurred, K & M asserts, among other things, that
"[t]here is no direct evidence as to who Phillips was referring to when Dodds purportedly overheard him saying [that,] but in light of the undisputed evidence that Malone was called by Phillips approximately three hours after Phillips had clocked out, the only reasonably inference is that Phillips was euphemistically referring to his wife as his 'boss.' It cannot be reasonably argued that Phillips'[s] statement amounts [to] substantial evidence that Phillips was acting in the line and scope of his employment at the time of the accident."
Thus, the question framed by the parties on appeal is whether K & M adequately rebutted the administrative presumption that Phillips was acting within the scope of his employment at the time of the accident such that the trial court properly foreclosed submission of that question to the jury or, put another way, whether substantial evidence was presented from which the jury could have determined that Phillips was acting within the scope of his employment when the accident occurred. As already noted, "[o]ur review is further subject to the caveat that this Court must review the record in a light most favorable to [Brown and Dodds] and must resolve all reasonable doubts against [K & M]." Pryor, 674 So.2d at 47.
Dodds testified that she heard Phillips tell Brown that he had been "on his way to get his boss" when the accident occurred. The meaning of Phillips's statement is subject to multiple interpretations, as is demonstrated by the arguments presented by the parties on appeal and the exchange that took place between the trial court and counsel for Brown and Dodds during oral arguments regarding K & M's motion for a JML. In determining whether a JML was appropriate, however, we cannot attempt to discern the actual meaning of Phillips's statement because that function falls to the jury. Instead, we are charged with drawing all reasonable inferences from the evidence presented in favor of Brown and Dodds. See id.
In so doing, it is clear that, based on Phillips's statement and the undisputed fact that he was driving K & M's truck at the time of the accident, a jury could reasonably infer that the "boss" to whom Phillips had referred was literally the owner of his employer, K & M, i.e., Malone. Moreover, to the extent that Dodds's testimony regarding Phillips's statement constituted what would otherwise be inadmissible hearsay, we note that K & M did not object to the admission of her testimony at trial and therefore waived any argument regarding its admissibility. See Fluker v. Wolff, 46 So.3d 942, 955 (Ala. 2010) (citing Davis v. Southland Corp., 465 So.2d 397 (Ala. 1985), for the proposition that "a party seeking to prevent the admission of evidence must object to the offering of that evidence because the failure to object at trial waives that objection"). Thus, the only question remaining regarding Dodds's testimony was what weight it should be afforded and not whether it was admissible.
K & M contends that it adequately rebutted Dodds's testimony with Malone's *363 testimony, who said that Phillips told him during a telephone call that he had taken K & M's truck to meet his wife, emphatically denied that he had actually required Phillips to drive K & M's truck to pick him up, and testified that he was at home asleep when the accident occurred. The comments made by the trial-court judge during the parties' oral arguments regarding K & M's motion for a JML indicate that he gave more weight to Malone's testimony, which he appears to have determined was more credible than Dodds's testimony. However, even assuming that K & M
"presented strong evidence that contradicts [Brown and Dodds's] evidence, the credibility and weight to be given to a witness's testimony are matters for the jury to determine. It is not the role of the circuit court to consider the credibility of a witness when it is ruling upon a motion for a [JML]."
McCombs v. Bruno's, Inc., 667 So.2d 710, 713 (Ala. 1995).
Moreover, as noted above, many aspects of Malone's testimony were contradicted not only by the testimony of Brown and Dodds but also by that of Nalley. Malone testified that neither the police nor Phillips were present when he arrived at the scene of the accident and that he had informed the police during a telephone call that Phillips had taken K & M's truck without authorization. Nalley's testimony contradicted Malone's testimony in both respects, and Brown and Dodds agreed that both the police and Phillips were still present when Malone arrived at the scene of the accident.
In other words, the record indicates that at least some portion of the testimony elicited at trial was inaccurate. If a jury believes Nalley's testimony that Malone did not inform him of Phillips's alleged unauthorized use of K & M's truck, it could place less weight on Malone's assertions to the contrary. See Polk v. Polk, 70 So.3d 363, 369 (Ala. 2010) ("When disputed questions of material fact are presented in a jury trial, it is the province of the jury, not the trial court, to resolve those disputes, to determine the credibility of the witnesses, and to decide the weight to place on each witness's testimony."). Additionally, if a jury believes the testimony of Nalley, Brown, and Dodds, indicating that Phillips, Malone, and the police were actually present at the scene of the accident simultaneously, it could reasonably infer that Malone's failure to report the alleged unauthorized use of K & M's truck, despite having had an opportunity to do so, indicates that Phillips's use of K & M's truck had actually been authorized. See id. (" ' " '[I]n exercising its discretion, a jury has the exclusive right to ... draw inferences from the evidence before it.' " ' " (quoting MAT Sys., Inc. v. Atchison Props., Inc., 54 So.3d 371, 383 (Ala. Civ. App. 2010), quoting in turn Wells v. Mohammad, 879 So.2d 1188, 1193 (Ala. Civ. App. 2003), quoting in turn Savoy v. Watson, 852 So.2d 137, 140 (Ala. Civ. App. 2002) ) ). In other words, when viewed in a light most favorable to Brown and Dodds, conflicts exist in the evidence presented at trial from which a jury could reasonably draw various inferences and make determinations regarding the witnesses' credibility that may affect how it resolves the question of K & M's vicarious liability.
" ' "A judgment as a matter of law is proper only where there is a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable people could differ and the moving party is entitled to a judgment as a matter of law." ' " Liberty Nat'l Life Ins. Co. v. Daugherty, 840 So.2d 152, 156 (Ala. 2002) (quoting *364 Southern Energy Homes, Inc. v. Washington, 774 So.2d 505, 510-11 (Ala. 2000), quoting in turn Locklear Dodge City, Inc. v. Kimbrell, 703 So.2d 303, 304 (Ala. 1997) ). Because the evidence presented at trial did not " 'eliminate any question as to whether [Phillips] was acting in the scope of his employment by having this truck ... when the accident occurred,' " we must reverse the trial court's judgment granting K & M's motion for a JML on the issue of its liability based on the doctrine of respondeat superior and remand the cause for further proceedings. Pryor, 674 So.2d at 50 (quoting Williams, 578 So. 2d at 1285).
REVERSED AND REMANDED.
Thompson, P.J., and Pittman, Moore, and Donaldson, JJ., concur.